402 P.2d 1010

**Charles ROTHWEILER, Petitioner,**

**v.**

**SUPERIOR COURT OF PIMA COUNTY,**
**Mary Anne Richey, Judge, and the**
**City of Tucson, Respondents.**

**No. 2 CA–CIV 109.**

Court of Appeals of Arizona.

June 14, 1965.

J. William Moore, Phoenix, for petitioner.

Calvin Webster, City Atty., Tucson, by John O. Franklin, Tucson, for respondents.

MOLLOY, Judge.

The petitioner is an accused under A.R.S. § 28–692 [Driving Under the Influence], convicted in the City Court of the City of Tucson who has appealed such conviction to the superior court. The respondent is a Judge of the Superior Court of Pima County, who the petition alleges proposes to deny the petitioner a jury trial as to the offense charged.

The response to the alternative writ which has been issued admits that the judges of the superior court in Pima Coun-

ty propose to deny the petitioner's demand for a jury trial and any like requests in other appeals from the city court. There is no objection made to the jurisdiction of this court to issue the subject writ; there is no suggestion that prohibition is not an appropriate remedy if the petitioner is entitled to a jury trial.

In the city court the defendant was sentenced to pay a fine of $100.00 and to serve ten days in the city jail. The penalty for the crime charged is imprisonment for not less than ten days nor more than six months, a fine of not less than one hundred nor more than three hundred dollars, or both. In addition the court is given authority to suspend the driving privileges of a person so convicted for a period not to exceed ninety days.

The grounds alleged in the petition for a writ of prohibition are based upon the assertion that the right to trial by jury, as to the offense charged, is guaranteed to the petitioner by both the federal and the state constitutions. Reference is made to Art. 2 of the Constitution of Arizona, §§ 23 and 24, A.R.S., and to the Sixth Amendment of the Constitution of the United States.

The pertinent portions of the state Constitution read as follows:

Art. 2, § 23, Constitution of the State of Arizona:

"The right of trial by jury shall remain inviolate * * *."

Art. 2, § 24, Constitution of the State of Arizona:

"In criminal prosecutions, the accused shall have the right * * * to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *."

The Sixth Amendment to the Federal Constitution has never been held to be applicable to restrict the states in the carrying out of their duties in the area of criminal prosecutions. The Hardware Dealers Mutual Fire Insurance Company of Wisconsin v. Glidden Company, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 [1931]; Lane v. Warden, Maryland Penitentiary, 4 Cir., 320 F.2d 179 [Md.1963]. However, whether this Amendment applies to the instant prosecution is not decisive, in that this court has come to the conclusion that the guarantee of jury trial as contained in the state Constitution is substantially the same as that contained within the Sixth Amendment.

This conclusion has been reached as a result of the examination of the petitioner's contention that the state Constitution guarantees the right of trial by jury as it existed in this state at the time of the adoption of the Constitution in 1910. At this time, part of the statutory law of the Territory was § 1191 of the Penal Code of 1901, which reads in part as follows:

"A trial by jury shall be had if demanded by either the territory or the defendant; but unless such demand is made before the commencement of the trial, a trial by jury shall be deemed waived. Upon demand being made by the territory or the defendant for a jury trial, the justice of the peace shall issue an order directed to the sheriff of the county, or to any constable, marshal or policeman therein, commanding such officer to summon the number of qualified persons specified in the order to appear at the time and place therein fixed to serve as jurors in the cause. * * *"

This section of our Code was contained in Tit. 21 of the Criminal Code, which was entitled "Proceedings in Justices', Police and Recorders' Courts." Provisions contained in this title appear to be generally applicable to procedure in all of the inferior courts. However, the fact that the call of the jury is to be by "the justice of the peace" creates some ambiguity.

When there is ambiguity in the meaning of a statute, it is proper to look at the statutory history. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 [1964]. The source of § 1191 of the 1901

Penal Code was § 2217 of the Penal Code of 1887, which read:

> "A trial by jury may be waived by the consent of both parties expressed in open court and entered in the docket. *The defendant shall be entitled, if demanded by him, to a jury trial.* The formation of the juries is provided for by a special statute." [Emphasis supplied.]

This section is in a chapter entitled "Proceedings in Justice's, Police and Recorder's Court." All prior codes of the Territory had similar provisions clearly pertaining to "Justices', Mayors' and Recorders' Courts." Ch. XI, § 583, of the Codes of 1871 and 1877 and of the Howell Code. It thus is clear that prior to the 1901 Revision there was a continuous legislative history granting a jury trial in criminal proceedings in all of the inferior courts.

It has been held as to the 1928 Revised Statutes that the meaning of previously existing law was not changed by the revision unless it clearly appeared that such was the intent of the legislature. Refsnes v. Oglesby, 50 Ariz. 494, 73 P.2d 90 [1937]. In "Preliminary Provisions" to the 1901 Penal Code, it was provided in § 4 thereof:

> "The provisions of this code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments."

In determining whether the Twenty-first Territorial Assembly intended to change the heretofore existing procedure in city courts by adopting the 1901 Revision, it should be noted that at this time the principal cities of Arizona—Phoenix, Prescott, Tombstone and Tucson—were incorporated under special acts of the legislature [Terrell v. Town of Tempe, 35 Ariz. 120, 127, 274 P. 786 (1929)], and that except for these "charter" cities there was little, if any, jurisdiction vested by the legislature in municipal courts. Miller v. Heller, 68 Ariz. 352, 354, 206 P.2d 569 [1949].

Under the charters of the cities of Phoenix, Prescott and Tombstone, the jurisdiction, power and authority of the judge of the Recorder's Court was equated by express language with that of the justices of the peace.[1] At least in these Recorders' Courts, the judge would have had no doubt about his authority to call the jury granted to a defendant in his court by said § 1191.

It is not felt that the change in the 1901 law giving the "territory" the right to demand a jury trial has any significance insofar as the problem at hand is concerned. Under the charters of the cities of Prescott and Tombstone there was authority to prosecute violations of the laws of the Territory. Miller v. Heller, supra, and see note 1, supra. The charter provisions of both Prescott and Tombstone [Art. V, § 12 of both charters] provided that prosecutions for the violation of any *city ordinance* should be brought in the name of the mayor and the common council of the city. Presumably other prosecutions, under the laws of the Territory, should be brought in the name of the Territory. The charter of the City of Tucson specifically provided that all prosecutions in the Recorder's Court would be brought in the name of the "Ter-

1. The wording of the charters of the cities of Tombstone and Prescott were identical, as follows:

"The Recorder's Court of said city as to all offenses committed within such limits, to which the jurisdiction of said court by this Act is declared to extend, whether against the laws of this territory, or the ordinances, resolutions, rules and regulations of this city, shall have the same jurisdiction, power and authority as is now or may be hereafter conferred upon Justices of the Peace or Justices' courts * * *" Charter of Tombstone, Act No. 39, Laws of 1881, Art. V, § 10, p. 52; Charter of the City of Prescott, Act No. 37, Laws of 1883, p. 66. The city charter of Phoenix contained similar language, but restricted the jurisdiction of the Recorder's Court to offenses against the ordinances of the city. Act No. 61, Laws of 1885, Art. XIV, § 10, p. 101.

ritory of Arizona" [Act No. 73, Art. XX, § 3, p. 211, Laws of 1883].

From the foregoing, it seems unlikely that the Territorial Assembly, by adopting the 1901 Revision of its laws, intended to establish a new procedure in police and recorder's courts so as to eliminate the right of the defendant to demand a jury. It should take a greater change in language than this to eliminate such a substantial right and to give to the prosecuting authorities, in case of overlapping jurisdiction between justice and recorder's courts, the election [by selecting the court in which to file a complaint] of determining whether the accused could demand trial by jury.

The objectionableness of such a construction is noted in the decision of State v. Hoben, 256 Minn. 436, 98 N.W.2d 813 [1959]. There the question was whether the legislature, in authorizing cities to legislate against such offenses as driving while intoxicated providing that the penalties of the ordinance should be "identical" with those provided by state law, intended that the rights of the defendant when charged with an offense against state law should be applicable also in the municipal court. In holding that the right of trial by jury was implied from the statutory provision making the penalty in the city court identical with the penalty under state law, thus rejecting the state's contention that the right of trial by jury depended upon which court the prosecution was filed in, the court said:

"Basic civil rights of the defendant would then depend upon the arbitrary choice of the prosecutive authorities as to the court in which action against him would be instituted. When a municipality undertakes such prosecution, it must, therefore, to insure uniformity of treatment, do so in a criminal prosecution which affords the defendant all the protection of criminal procedure including the right of trial by jury and immunity from double punishment." [98 N.W.2d 819]

This court is of the opinion that the words "justice of the peace" in § 1191 of the 1901 Penal Code included a police judge and a Recorder of a Recorder's Court and that the section was generally applicable, as indicated by the caption of the title in which it is included, to "Proceedings in Justices', Police and Recorders' Courts."

In 1909, in § 8, Ch. 25, of the laws of that year, the Territorial Assembly provided:

"In the trial of offenses for the violation of ordinances of cities or towns of such a nature as by the common law were not triable before a jury, no jury trial shall be granted."

This being the state of the statutory law at the time of the adoption of our Constitution, this court is satisfied that an accused could have demanded in a city court a jury trial as to all criminal charges, except those pertaining to violations of municipal ordinances which were of such nature as were not triable before a jury at the common law. It is the contention of the petitioner that this situation has been perpetuated by the quoted provisions of our Constitution.

This court believes that such an interpretation would place undue emphasis upon the particular statutory situation at the time of the adoption of our Constitution and would misinterpret the basic purpose in mind when the constitutional guarantees were framed. To accept an arbitrary distinction based upon legislative authorship of a particular penal statute as being the test of whether a jury trial was guaranteed does not render proper respect to the constitutional safeguards under consideration.

Both in the year 1912 and now, state criminal statutes have concerned themselves with relatively petty offenses. For instance, § 365 of the 1901 Penal Code provided a maximum penalty of a twenty dollar fine for a physician or an accoucheur who did not report to the county recorder a birth or a death. As of today, A.R.S. § 13-1011 imposes a fine of not less than five nor more

than twenty-five dollars for permitting swine or fowl to run at large.

As compared to these very minor offenses dealt with by some state statutes, municipal ordinances have sometimes, particularly in the case of cities incorporated by special act of the Assembly, dealt with crimes of some substance.[2]

Decisions of our Supreme Court, though occasionally stating that the right of trial by jury as declared by our Constitution applies to such rights as "existed when the Constitution was adopted" [Brown v. Greer, 16 Ariz. 215, 217, 141 P. 841, 842 [1914], have consistently held that the right as guaranteed in the Constitution does not apply to petty offenses. Bowden v. Nugent, 26 Ariz. 485, 491, 226 P. 549 [1924]; In re Davis, 28 Ariz. 312, 236 P. 715 [1925]; State v. Cousins, 97 Ariz. 105, 397 P.2d 217 [1964].

Brown v. Greer, supra, stated that § 1389 of the 1901 Code, providing for jury trial of all cases both at law and equity, was perpetuated by the Constitution. This was repudiated by the subsequent decision of Donahue v. Babbitt, 26 Ariz. 542, 547, 227 P. 995, 996 [1924], which said:

"* * * The constitutional guaranty concerned a plain, permanent right made almost sacred by years of recognition and usage. Section 1389 of the 1901 Code did not possess these qualities. * * *"

State v. Cousins, supra, the latest pronouncement of our Supreme Court on this subject, chooses careful language in saying:

"* * * The right of a trial by jury, which was thus confirmed and retained inviolate, is not and has never been a right which a defendant could invoke in all instances, even in charges of a criminal nature. It is applicable only in those matters in which it existed anciently under the common law. * * *" 97 Ariz. 105, 397 P.2d 218 [1964].

The foregoing is in accord with the sentiment expressed in an article coauthored by the late Felix Frankfurter, when he was a professor at Harvard Law School, speaking of the United States Constitution:

"It belittles the Constitution to crystallize it by the caprice of some statute which expressed the limit of punishment meted out in 1789 through summary procedure." Vol. 39, Harv.L. Rev., "Petty Federal Offenses and Trial by Jury," p. 981.

■ Accordingly, this court rejects the petitioner's contention that the state Constitution perpetuates the statutory law in existence at the time of the adoption of our Constitution, thus guaranteeing him a jury trial on demand.

■ The next contention of the petitioner is that this offense falls within the classification of those crimes as to which a right of jury trial is recognized under the common law. The disposal of this contention the court does not reach, because

2. For instance, there has been a Recorder's Court in the City of Prescott since it was incorporated by special act of the territorial legislature in 1883. Ch. 37, Acts of 1883. Under its charter, the City of Prescott was given power, among others, to license, regulate, restrain, suppress and/or prohibit such things as:
"* * * gambling houses, * * * bawdy houses, the sale of spiritous or malt liquors in quantities less than one quart, * * * houses of prostitution * * * all immoderate driving in any of the streets, * * * the carrying of concealed or deadly weapons, * * *." Art. 1, § 4 of the Charter.
By Art. X of the same Charter, the city was authorized to punish a violation of its ordinances by "a fine not exceeding three hundred dollars [$300], or a term of imprisonment not exceeding six months, or both such fine and imprisonment."
Similarly, Tombstone, in its charter had power to confine criminals for six months for violations of its ordinances. Art. X, § 21, Act No. 39, Laws of 1881.

it is satisfied that under pertinent statutes and rules of procedure the defendant's demand for a jury trial must be honored. If the petitioner has either a constitutional or a statutory right to a jury trial, he must prevail in this proceeding. State ex rel. Suchta v. District Court of Sheridan County, 74 Wyo. 48, 283 P.2d 1023 [1955]; City of St. Louis v. Walker, Mo.App., 309 S.W.2d 671 [1958]; State v. Hauser, 137 Neb. 138, 288 N.W. 518 [1939].

■ Though the petitioner has not contended there is a statutory right to a jury trial, this court goes outside of the contentions made because the broad public interest involved. It is traditional with our judicial system that the courts go out of their way to enforce the rights of the individual insofar as jury trials are concerned. In Schick v. United States, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 [1904], one of the landmark decisions in this area of our law, the question of whether the proceedings were valid, because of lack of a jury trial, was raised by the court on its own motion, even though trial by jury had been waived below by the accused and even though only a $50.00 fine was involved.

■ The pertinent statutes which this court holds give to the accused a right of trial by jury in the superior court are these:

A.R.S. § 13–161 [in part]:

"In a criminal action defendant is entitled:

"1. To have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed."

A.R.S. § 13–1592:

"An issue of fact rises in a criminal action upon a plea of not guilty, a former conviction or acquittal of the same offense, or of once in jeopardy, and *the issue of fact shall be tried by a jury.*" [Emphasis supplied.]

Prior to State v. Cousins, supra, this court would have had no problem in holding that the above quoted statutes were applicable to a trial de novo in the superior court. In Vazzano v. Superior Court, 74 Ariz. 369, 249 P.2d 837 [1952], the court was concerned with the procedure to be followed in a trial de novo in the superior court after an appeal from a decision of the Superintendent of Liquor Licenses and Control. This court said:

"Our statutes expressly declare the procedure to be followed in trials conducted in the superior courts of the state. * * * These procedural rules control in matters reaching the superior court by an appeal, just as they do in suits originating there. * * *"

Other states have held that on appeal from a municipal court, the appellate court on a trial de novo is controlled in the matter of granting a jury trial by the general statutes pertinent to trials in the higher court. State v. District Court of Sheridan County, supra; City of St. Louis v. Walker, supra; State v. Hauser, supra.

However, in State v. Cousins the following statement was made:

"We therefore state that where a defendant is not entitled to a jury trial in an inferior court, such as the City Court in this case, he is not entitled to a jury on appeal in the superior court. * * *" 97 Ariz. 105, 397 P.2d 219 [1964].

There is no citation given for this general statement. The holding of State v. Cousins this court believes to be eminently correct, because there the prosecution was one pertaining to a city ordinance, and A.R.S. § 22–425 provides that "no jury trial shall be granted" as to such violations.

This court has been able to find no general law to the effect that if there is no jury trial below, there cannot be one on appeal. The converse has been stated to be part of our common law: "In general, at common law, there cannot be a new trial by a jury on review of a case which has once been tried by a jury; * * *." 5 C. J.S. Appeal and Error § 1532, p. 1024.

Historically, in the colonies of Massachusetts and Connecticut, no right of trial

by jury was afforded at the initial trial before a magistrate, but right of trial by jury was allowed on appeal. 39 Harv.L.Rev., Petty Federal Offenses and Trial by Jury, pp. 940–943.

Be this as it may, this court is bound by the pronouncements of our Supreme Court, and accordingly applies the above quoted general statement from the Cousins case to the situation before it.

Previously in this opinion, we traced the right of jury trial through the statutes of this state to the time of statehood. § 1191 of the 1901 Penal Code became § 1318 of the Penal Code of 1913, then § 5232 of the Revised Code of 1928 and then § 44–3209 of the Code of 1939. In each of these codifications the subject section was found in a chapter or an article pertaining generally to proceedings in inferior courts. Everything that has been said about the meaning of the 1901 statute applies to these later codifications thereof.

In the 1956 revision, the pertinent sections were rearranged. The provision pertaining to jury trials became A.R.S. § 22–320 in Ch. 3 of Tit. 22, which pertains to "Criminal Proceedings in Justice Courts." Chapter 4 deals with "Police Courts." In this chapter, several of the procedural provisions of Ch. 3 are duplicated, but there are no procedural rules for a jury trial, though obviously there must be a jury trial in city court when a constitutional right to a jury trial is exercised. Bowden v. Nugent, supra.

The only mention of a jury trial in this chapter is the section providing that as to the trial of offenses for violation of *ordinances* of cities, there shall be no trial by jury. A.R.S. § 22–425. The rule of interpretation of *inclusio unius est exclusio alterius* would lead one to believe that as to other offenses, a jury trial would be allowed. Certainly there is nothing here to indicate a legislative intent to abrogate an existent right to demand a jury trial.

■ This court believes that the rule of statutory construction negating change unless clearly expressed applies, and that the provisions of A.R.S. §§ 22–320 to 22–326 [pertaining to jury trials] apply equally to trials in justice and police courts.

■ If this be not the case, the outcome of this proceeding remains the same, for A.R.S. § 22–423, pertaining to city courts, adopts the criminal rules of procedure of the superior court "when not otherwise prescribed."

If this section does not incorporate the statutory provisions for procedure pertaining to the superior court, as quoted above, it does include Rule 273, of Rules of Criminal Procedure, 17 A.R.S., which reads as follows:

"All questions of law shall be decided by the court and all questions of fact by the jury, except as provided in Rule 173 [pertaining to motions to quash]. The jurors shall apply to the facts the law as given to them by the court."

Therefore, if there must, in Arizona, be a right to jury trial below in order for the right to pertain to a trial de novo on appeal, this court holds that there was a right to jury trial below as to this action, unless it was waived as provided by A.R.S. § 22–320, subsec. A.

■ In this matter of whether a jury trial should be afforded, we are in an area affording "considerable margin for legislative discretion." [39 Harv.L.Rev., p. 979]; cf. District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 [1937]. This court believes this discretion has been exercised favorably to petitioner's contention herein. The right of trial by jury has been afforded in all civil actions no matter how petty. A.R.S. § 22–220 and Rule 38, Rules of Civil Procedure, 16 A.R.S. This court holds that existing statutes and procedural rules also provide in all criminal actions tried in the superior court for a right of trial by jury, except as to trials involving violations of city ordinances as to which there was no right of trial by jury at common law.

If this procedure is cumbersome and impractical, it may be corrected by the Legislature. In the final analysis, this court would rather be charged with impracticality than with holding that a legislative grant of jury trial has been repealed by innuendo.

Writ made permanent.

KRUCKER, C. J., and HATHAWAY, J., concurring.