70 P.3d 454

The **STATE** of Arizona, Petitioner,

v.

Hon. **Michael J. BROWN, Judge of the Superior Court of the State of Arizona, in and for the County of Santa Cruz,** Respondent,

**and**

**Jonathan Wayne McMullen, Real Party in Interest.**

No. 2 CA–SA 2003–0003.

Court of Appeals of Arizona. Division 2, Department B.

May 23, 2003.

---

Martha S. Chase, Santa Cruz County Attorney, By Marc Offenhartz, Nogales, for Petitioner.

Robert Hooker, Tucson, for Real Party in Interest.

## OPINION

PELANDER, Presiding Judge.

¶ 1 In this special action, petitioner State of Arizona challenges two presentence orders the respondent judge entered in the underly-

ing criminal case, in which real party in interest Jonathan McMullen pled guilty to reckless manslaughter. Based on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (*Ring II* ), the respondent judge first ordered that the state would have to prove, in a jury trial and beyond a reasonable doubt, any aggravating circumstances alleged pursuant to A.R.S. § 13–702(C). In a second order, entered after the state had petitioned for special action relief from the first order, the respondent judge ruled that A.R.S. §§ 13–702 and 13–702.01 "are unconstitutional on their face, and as applied" to the criminal case against McMullen.[1]

¶ 2 This court subsequently ordered the state and McMullen to file supplemental memoranda on the constitutional issue, accepted jurisdiction of the special action, and vacated both of the respondent judge's orders, with a decision to follow. This is that decision. We first note that special action jurisdiction is appropriate here because the state has no "equally plain, speedy, and adequate remedy by appeal." Ariz. R.P. Special Actions 1(a), 17B A.R.S.; *see* A.R.S. § 13–4032. In addition, the special action raises "questions of law that are of statewide importance, apparently of first impression, and likely to recur." *O'Brien v. Escher,* 204 Ariz. 459, ¶ 3, 65 P.3d 107, ¶ 3 (App.2003); *see also State v. Fell,* 203 Ariz. 186, ¶ 1, 52 P.3d 218, ¶ 1 (App.2002); *State v. Nichols,* 201 Ariz. 234, ¶ 1, 33 P.3d 1172, ¶ 1 (App.2001).

¶ 3 On the merits, we hold that *Apprendi* and its progeny neither compel a jury trial for determining aggravating circumstances in a noncapital case under § 13–702 nor render that statute or § 13–702.01 unconstitutional. Accordingly, we grant relief and reaffirm our previous order vacating the respondent judge's orders.

## BACKGROUND

¶ 4 According to its petition for special action, the state charged McMullen, a minor,

---

1. Although the respondent judge had set an aggravation/mitigation hearing before a jury, sua sponte he stayed that hearing and any further

proceedings pending appellate disposition of the issues raised in this special action.

as an adult, pursuant to A.R.S. § 13–501(A)(1), with first-degree murder of his mother and two counts of attempted first-degree murder of his father and brother. McMullen pled guilty to an amended count one, reckless manslaughter, in violation of A.R.S. § 13–1103(A)(1) and (B), in exchange for the dismissal of the latter two charges. The plea agreement stated that the crime to which McMullen was pleading guilty "carries a minimum sentence of 3 years; a presumptive sentence of 5 years and a maximum sentence of 12.5 years." The agreement also stated that "[p]robation is available."

¶ 5 The respondent judge initially deferred acceptance of the plea until the time of sentencing and sua sponte ordered a trial by jury for determination of any aggravating circumstances the state alleged under § 13–702(C).[2] The respondent judge further ruled that the state bore the burden of proving any aggravation factors beyond a reasonable doubt. Thereafter, the state disclosed four aggravating circumstances it intended to prove: "[u]se, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime," A.R.S. § 13–702(C)(2); "[p]resence of an accomplice," § 13–702(C)(4); "[t]he physical, emotional and financial harm caused to the victim or, if the victim has died as a result of the conduct of the defendant, the emotional and financial harm caused to the victim's immediate family," § 13–702(C)(9); and "[l]ying in wait for the victim or ambushing the victim during the commission of any felony." § 13–702(C)(17).

¶ 6 On McMullen's subsequent motion, the respondent judge entered another order declaring unconstitutional §§ 13–702 and 13–702.01, ruling that "[t]he Arizona sentencing enhancement statutory scheme as represented by these statutes is in violation of the Fifth, Sixth and Fourteenth Amendments to

the Constitution of the United States and Article 2, Sections 3, 23, and 24 of the Constitution of the State of Arizona." In determining whether special action relief is warranted under Rule 3, Ariz. R.P. Special Actions, 17B A.R.S., we review de novo both orders of the respondent judge. *See Arizona Dep't of Public Safety v. Superior Court,* 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997) (constitutional issues reviewed de novo on special action).

## DISCUSSION

■ ¶ 7 Under § 13–1103(A)(1) and (B), the reckless manslaughter charge (as amended) to which McMullen pled guilty is a class two felony. Section 13–701, A.R.S., entitled "Sentence of imprisonment for felony; presentence report," provides in part that "the term of imprisonment for a felony shall be determined as follows for a first offense: ... For a class 2 felony, five years." § 13–701(C)(1). The next statute, § 13–702, is entitled "Sentencing" and states in pertinent part:

> B. The upper or lower term imposed pursuant to ... [§ ] 13–702.01 ... or subsection A of this section may be imposed only if the circumstances alleged to be in aggravation or mitigation of the crime are found to be true by the *trial judge* on any evidence or information introduced or submitted to the court before sentencing or any evidence previously heard by the judge at the trial, and factual findings and reasons in support of such findings are set forth on the record at the time of sentencing.[3]

(Emphasis added.) Subsection (C) of § 13–702 then lists nineteen "aggravating circumstances" the trial court "shall consider" in "determining the sentence." As noted in ¶ 5 above, the state alleged four of those aggra-

---

**2.** Under his plea agreement, McMullen expressly waived "his right to jury trial." The respondent judge found, however, that McMullen had waived a trial by jury only on the substantive offense of reckless manslaughter and had never intended "to waive his right to trial by jury on the facts in aggravation." The state does not challenge that finding now and also conceded below that McMullen had not "given ... up" any right he might have to a jury trial on any alleged

aggravating circumstances. McMullen waived any right to a jury trial on whether mitigating circumstances existed under § 13–702(D).

**3.** Because the offense to which McMullen pled guilty involved the discharge of a deadly weapon and the intentional or knowing infliction of serious physical injury, § 13–702(A) does not apply to him.

vating circumstances existed in McMullen's case. Subsection (D) of § 13–702 requires the trial court to consider various "mitigating circumstances" set forth therein.[4]

¶ 8 5 Section 13–702.01, A.R.S., entitled "Exceptional circumstances; aggravation; mitigation," provides in part:

A. Notwithstanding § 13–702, subsection A, if a person is convicted of a felony without having previously been convicted of any felony and if the court finds that at least two substantial aggravating factors listed in § 13–702, subsection C apply, the court may increase the maximum term of imprisonment otherwise authorized for that offense up to the following maximum terms:

1. For a Class 2 Felony    12.5 Years

. . . .

B. Notwithstanding § 13–702, subsection A, if a person is convicted of a felony without having previously been convicted of any felony and if the court finds that at least two substantial mitigating factors listed in § 13–702, subsection D apply, the court may decrease the minimum term of imprisonment otherwise authorized for that offense down to the following minimum terms:

1. For a Class 2 Felony    3 Years

. . . .

G. The upper or lower term imposed pursuant to this section may be imposed only if the circumstances alleged to be in aggravation or mitigation of the crime are found to be true by the trial judge on any evidence or information introduced or submitted to the court before sentencing or any evidence previously heard by the judge at the trial, and factual findings and reasons in support of these findings are set forth on the record at the time of sentencing.

¶ 9 In finding §§ 13–702 and 13–702.01 unconstitutional, the respondent judge characterized both statutes as "sentence enhancing statutes" and stated: "They allow the

judge to sentence the defendant to as much as 40% less than the five years set forth in ARS 13–701 (3 years) and to as much as 150% more than five years (12.5 years)." Consequently, the judge stated, McMullen "is exposed to two and a half (2½) times the maximum sentence the Court could impose on his plea of guilty." The respondent judge further noted that § 13–702(B) mandates the trial judge, as trier of fact, to consider and make factual findings on any aggravation and mitigation "circumstances" under § 13–702(C) and (D). See also § 13–702.01(G). From this, the judge concluded:

No matter how artfully disguised, these "circumstances" or "sentencing factors" are FACTS. Therefore, they are Elements of the Crime upon which the defendant must be sentenced. Every defendant has a right to trial by jury as to the existence of each element of the crime with which he is charged and for which the state seeks to punish him; and that jury must find those FACTS "Beyond a Reasonable Doubt."

¶ 10 The respondent judge's analysis and conclusion hinged largely on Apprendi and Ring II. In Apprendi, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455. Likewise, in overturning Arizona's former capital sentencing scheme, under which the death penalty could be imposed only on a judge's post-trial finding of one or more aggravating factors, the Court in Ring II reiterated Apprendi's thrust:

If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt. A defendant may not be "expose[d] . . . to a penalty exceeding the maximum

---

4. Section 13–702(D), A.R.S., also requires the trial court to "take into account the amount of aggravating circumstances and whether the amount of mitigating circumstances is sufficiently substantial to call for the lesser term." And,

"[i]f the court finds aggravating circumstances and does not find any mitigating circumstances, the court shall impose an aggravated sentence." Id.

he would receive if punished according to the facts reflected in the jury verdict alone."

*Ring II,* 536 U.S. at 602, 122 S.Ct. at 2439–40, 153 L.Ed.2d at 572, *quoting Apprendi,* 530 U.S. at 483, 120 S.Ct. at 2359, 147 L.Ed.2d at 450 (internal citation omitted; emphasis in *Apprendi* ). Finding *Apprendi* and *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), "irreconcilable," the Court in *Ring II* overruled *Walton* "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S. at 609, 122 S.Ct. at 2443, 153 L.Ed.2d at 576–77.

¶ 11 Arizona courts have addressed the scope and effect of *Apprendi* and *Ring II* in various contexts. For example, in *State v. Benenati,* 203 Ariz. 235, 52 P.3d 804 (App. 2002), this court held that *Apprendi* requires a jury to determine a defendant's release status for purposes of imposing the mandatory, two-year sentence enhancement under A.R.S. § 13–604(R). Therefore, we concluded, the requirement in § 13–604(P) that the sentencing judge make that release status determination "unconstitutionally conflicts with the defendant's right to a jury trial on that issue." *Benenati,* 203 Ariz. 235, ¶ 22, 52 P.3d 804, ¶ 22; *see also State v. Gross,* 201 Ariz. 41, 31 P.3d 815 (App.2001) (same). Noting in *Benenati* that "a fact exposing a defendant to increased sentencing, not the actual sentence imposed, is the litmus test," we "strictly limit[ed] to the fact of a prior conviction the *Apprendi* exception permitting a court, and not a jury, to find sentence enhancers that expose a defendant to a sentence greater than otherwise permissible." 203 Ariz. 235, ¶¶ 13, 22, 52 P.3d 804, ¶¶ 13, 22.

¶ 12 Similarly, in *Nichols,* 201 Ariz. 234, ¶ 7, 33 P.3d 1172, ¶ 7, we held that "the fact of drug-sale income greater than $25,000 [under A.R.S. § 13–3410(A) ] must be found by a jury beyond a reasonable doubt." That statute, we noted, "presents a classic *Apprendi* scenario; it mandates a sentence—life imprisonment—far beyond the maximum sentencing range for possessing dangerous drugs or marijuana for sale upon the finding

of specific facts: annual income through illegal drug sales exceeding $25,000." 201 Ariz. 234, ¶ 6, 33 P.3d 1172, ¶ 6.

¶ 13 The common thread in *Benenati, Gross,* and *Nichols* was that a judge's factual finding could have impermissibly exposed the defendant to an enhanced sentence exceeding the maximum sentence authorized by the jury's verdict and otherwise prescribed in the applicable, statutory sentencing range. In other situations, however, Arizona courts have found no constitutional problem when a judge's post-trial factual finding may have affected the sentence but did not expose the defendant to a sentence exceeding the prescribed statutory maximum for purposes of *Apprendi.*

¶ 14 For example, in *State v. Tschilar,* 200 Ariz. 427, 27 P.3d 331 (App.2001), Division One of this court concluded that *Apprendi* does not require a jury to determine whether the defendant had safely released a kidnapping victim for purposes of A.R.S. § 13–1304(B), because "the fact of [the victim's safe] release as found by the court does not expose a defendant to a punishment exceeding that permitted by the verdict." 200 Ariz. 427, ¶ 19, 27 P.3d 331, ¶ 19. As the court in *Tschilar* noted, *Apprendi* did not undermine "the trial court's discretion to consider various factors related to the offense and the offender when it imposes a sentence within the range of punishment prescribed by the [sentencing] statute." 200 Ariz. 427, ¶ 18, 27 P.3d 331, ¶ 18. Thus, "consistent with [*Apprendi*'s] holding, a legislature may devise sentence classifications dependent upon certain factors within a set range, the purpose being to avoid 'penal statutes that expose *every* defendant convicted of [a particular offense] to a maximum sentence exceeding that which is, in the legislature's judgment, generally proportional to the crime." ' 200 Ariz. 427, ¶ 20, 27 P.3d 331, ¶ 20, *quoting Apprendi,* 530 U.S. at 490 n. 16, 120 S.Ct. at 2363 n. 16, 147 L.Ed.2d at 455 n. 16 (emphasis in *Apprendi* ).

¶ 15 In *State v. Flores,* 201 Ariz. 239, 33 P.3d 1177 (App.2001), this court addressed the question of whether the defendant was entitled to have a jury determine his probation or parole status before he could be sen-

tenced pursuant to A.R.S. § 13–604.02(A). That statute provides, in part, that a person convicted of certain felony offenses, "if committed while the person is on probation for a conviction of a felony offense or parole, ... shall be sentenced to imprisonment for not less than the presumptive sentence." We held that because the defendant's "probationary status ... did not increase the penalty for his crime 'beyond the prescribed statutory maximum,' but merely raised the crime's minimum term, the holding of *Apprendi* is inapplicable to him." 201 Ariz. 239, ¶ 8, 33 P.3d 1177, ¶ 8, *quoting Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455 (citation omitted). Division One of this court reached the same conclusion with respect to a sentence enhanced pursuant to A.R.S. § 13–604.02(B). *See State v. Cox*, 201 Ariz. 464, ¶ 18, 37 P.3d 437, ¶ 18 (App.2002); *see also State v. Rodriguez*, 200 Ariz. 105, ¶ 10, 23 P.3d 100, ¶ 10 (App.2001) (no *Apprendi* violation when judge's presentence factual findings "did not increase the statutory maximum prison sentence [defendant] faced").

¶ 16 The validity of the holdings in *Flores* and *Cox* was confirmed in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), in which the Supreme Court held that *Apprendi* is not implicated if the court-found sentencing factor merely raises the mandatory minimum penalty. The principal question addressed in *Harris* was whether *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), survived *Apprendi*. 536 U.S. at 550, 122 S.Ct. at 2410, 153 L.Ed.2d at 533. In *McMillan*, the Court "sustained a statute that increased the minimum penalty for a crime, though not beyond the statutory maximum, when the sentencing judge found, by a preponderance of the evidence, that the defendant had possessed a firearm." *Harris*, 536 U.S. at 550, 122 S.Ct. at 2410, 153 L.Ed.2d at 533.

¶ 17 In *Harris*, the Supreme Court upheld as constitutional a federal statute, 18 U.S.C. § 924(c)(1)(A), which permitted the trial judge to make a factual finding—that the defendant had "brandished" a gun during the commission of a drug offense—to increase the statutory minimum sentence from five to seven years in prison. 536 U.S. at 556, 122 S.Ct. at 2413–14, 153 L.Ed.2d at 537. In its plurality opinion, the Court reaffirmed *McMillan* as follows:

> *McMillan* and *Apprendi* are consistent because there is a fundamental distinction between the factual findings that were at issue in those two cases. *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime—and thus the domain of the jury—by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As *McMillan* recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution.

536 U.S. at 557, 122 S.Ct. at 2414, 153 L.Ed.2d at 537–38.

¶ 18 As the Court in *Harris* also stated, "[t]hat a fact affects the defendant's sentence, even dramatically so, does not by itself make it an element." *Id.* at 566, 122 S.Ct. at 2419, 153 L.Ed.2d at 544. The Court explained:

> Read together, *McMillan* and *Apprendi* mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of the constitutional analysis. Within the range authorized by the jury's verdict, however, the political system may channel judicial discretion—and rely upon judicial expertise—by requiring defendants to serve minimum terms after judges make certain factual findings. It is critical not to abandon that understanding at this late date. Legislatures and their constituents have relied upon *McMillan* to exercise control over sentencing through dozens of statutes like the one the Court approved in that case.

*Id.* at 567, 122 S.Ct. at 2419, 153 L.Ed.2d at 544.

¶ 19 Against this legal backdrop, we find two significant flaws in the respondent

judge's reasoning and conclusion. First, despite his thoughtful and extensive rulings, the judge did not cite *Harris,* nor do McMullen or the state address *Harris* or even mention *Flores, Cox,* or *Tschilar.* And, in our view, this case is more analogous to *Harris* than to *Apprendi* or *Ring II.*

¶ 20 *Harris,* unlike this case, involved a judge's factual finding that raised the mandatory minimum sentence. Despite that distinction, however, *Harris* supports the principle that a judge may constitutionally make factual findings affecting, upward or downward, the ultimate sentence that is authorized by the jury's verdict, as long as the factual findings do not expose the defendant to an enhanced sentence beyond the maximum sentence prescribed in the applicable statutory sentencing range. As noted in ¶ 10 above, that latter possibility clearly was the constitutional concern in *Apprendi* and *Ring II. See Apprendi,* 530 U.S. at 481, 120 S.Ct. at 2358, 147 L.Ed.2d at 449 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute."). *See also Sattazahn v. Pennsylvania,* 537 U.S. 101, ——, 123 S.Ct. 732, 739, 154 L.Ed.2d 588, 598–99 (2003) ("Put simply, if the existence of any fact (other than a prior conviction) increases the *maximum* punishment that may be imposed on a defendant, that fact—no matter how the State labels it—constitutes an element, and must be found by a jury beyond a reasonable doubt.") (emphasis added); *cf. United States v. Tighe,* 266 F.3d 1187, 1192 (9th Cir.2001) ("A fact that is used to increase the maximum statutory penalty to which a defendant is exposed raises an entirely different set of constitutional concerns than a fact that merely affects where a sentence is fixed within an undisputed statutorily mandated range.").

¶ 21 *Harris,* decided the same day as *Ring II,* made clear that "[j]udicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." *Harris,* 536 U.S. at 558, 122 S.Ct. at 2415, 153 L.Ed.2d at 538. And, as noted in *Harris,* facts that merely affect sentencing within a statutory range, "though stigmatizing and punitive, have been the traditional domain of judges." *Id.* at 560, 122 S.Ct. at 2416, 153 L.Ed.2d at 539. According to the Court, "[t]here is no reason to believe that those who framed the Fifth and Sixth Amendments would have thought of [such facts] as the elements of the crime." *Id.* In sum,

> [w]hether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. . . . The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from [the grand and petit] juries—and without contradicting *Apprendi.*

*Id.* at 565, 122 S.Ct. at 2418, 153 L.Ed.2d at 543.

¶ 22 Second, and perhaps more importantly, the respondent judge's rulings and McMullen's entire argument rest on a fundamentally flawed premise—that § 13–701 establishes a five-year term as the "maximum" sentence for a first offense, class two felony, such as the reckless manslaughter charge to which McMullen pled guilty.[5] Starting with that premise, the judge concluded that exposing McMullen to a sentence that might exceed that five-year "maximum," based on the judge's (rather than a jury's) finding of aggravating circumstances, is unconstitutional under *Apprendi* and *Ring II.* Again, we disagree with the judge's conclusion because we reject its underlying premise.

¶ 23 In *Apprendi,* "New Jersey's 'hate crime enhancement[ ]' . . . doubled [the defendant's] maximum authorized sentence," and

---

5. We note, however, that at the hearing that resulted in the respondent judge's first order, he stated several times that reckless manslaughter "carries a *presumptive* sentence of five years." (Emphasis added.) But in his subsequent orders, the judge characterized the five-year term as the "maximum" sentence, which could be exceeded only if he found aggravating circumstances under § 13–702(C).

the ultimate sentence imposed on him exceeded by two years the maximum sentence otherwise prescribed by statute, with the increase based solely on a judge-made finding that the crime had been motivated by racial bias. *Ring II*, 536 U.S. at 601, 122 S.Ct. at 2439, 153 L.Ed.2d at 572. Similarly, the Court in *Ring II* characterized Arizona's former capital sentencing scheme as prescribing a "maximum" sentence of life imprisonment for a first-degree murder conviction, based solely on the jury's verdict. *Id.* at 597, 122 S.Ct. at 2437, 153 L.Ed.2d at 569. Thus, according to *Ring II*, only if the trial court found one or more aggravating factors under former A.R.S. § 13–703 could the court exceed that "maximum" sentence by imposing a death sentence.[6] *Id.*

¶ 24 In contrast, we have neither been cited to nor found any Arizona cases that have construed the sentence specified in § 13–701 as the "maximum" sentence for a noncapital offense or otherwise equated the two. Rather, Arizona courts consistently have referred to and treated the sentence

prescribed in § 13–701 as the presumptive, not maximum, sentence. *See, e.g., State v. DePiano*, 187 Ariz. 27, 29, 926 P.2d 494, 496 (1996) (presumptive prison term determined by § 13–701); *State v. Solano*, 150 Ariz. 398, 399, 724 P.2d 17, 18 (1986) (§ 13–701 sets forth presumptive sentences for felony offenses).[7] So, too, do various Arizona statutes. *See, e.g.,* A.R.S. § 13–502(D) (if finder of fact finds defendant guilty except insane, "the court shall determine ... the presumptive sentence he could have received pursuant to ... [§ ] 13–701"); § 13–4032(5) (state may appeal "if the sentence imposed is other than the presumptive sentence authorized by § 13–604 or 13–701").

¶ 25 Thus, the five-year prison term prescribed in § 13–701 for a first offense, class two felony is merely the presumptive sentence that typically would apply absent any evidence of aggravating or mitigating circumstances or if the trial court were to find such evidence is equally balanced. For approximately a quarter century, Arizona's statutory sentencing scheme has prescribed sentencing

**6.** We observe that the Supreme Court in *Ring II* essentially adopted our supreme court's explanation of Arizona's former capital sentencing system. 536 U.S. at 597, 122 S.Ct. at 2437, 153 L.Ed.2d at 569. In *State v. Ring*, 200 Ariz. 267, ¶ 42, 25 P.3d 1139, ¶ 42 (2001) (*Ring I*), our supreme court stated:

> In Arizona, a defendant cannot be put to death solely on the basis of a jury's verdict, regardless of the jury's factual findings. The range of punishment allowed by law on the basis of the verdict alone is life imprisonment with the possibility of parole or imprisonment for "natural life" without the possibility of release.

Thus, aside from a death sentence based on the trial court's post-trial findings, Arizona's former scheme prescribed a sentencing "range" for a first-degree murder conviction of natural life or life with the possibility of parole after either twenty-five or thirty-five years, depending on the victim's age. *See* former A.R.S. § 13–703(A). And the jury's verdict alone authorized a sentence within that range. Under the former system, then, the trial court, presumably based on consideration of and findings on any aggravating and mitigating circumstances under § 13–703, could constitutionally determine which of the two life sentence options within that range was most appropriate without violating *Apprendi's* principles. *See State v. Viramontes*, 204 Ariz. 360, ¶ 12, 64 P.3d 188, ¶ 12 (2003) ("The statutes limit sentencing procedures in a non-capital first degree murder case to those set forth in section

13–703."). Moreover, the same procedure apparently applies under Arizona's current statutes, as amended in 2002 in response to *Ring II*. *See* A.R.S. § 13–703(A) (retaining distinction between sentences of natural life and life with possibility of parole); § 13–703.01(A) ("If the state has not filed a notice of intent to seek the death penalty and the defendant is convicted of first degree murder, the court shall determine whether to impose a sentence of life or natural life."); § 13–703.01(H) ("If the trier of fact is a jury and the jury unanimously determines that the death penalty is not appropriate, the court shall determine whether to impose a sentence of life or natural life.").

**7.** *See also State v. Ramos*, 133 Ariz. 4, 7, 648 P.2d 119, 122 (1982) ("The statutorily presumptive term of imprisonment for the crime for which appellant was found guilty is five years. A.R.S. § 13–701(B)(2)."); *State v. Buffum*, 125 Ariz. 488, 610 P.2d 1049 (1980) (acknowledging that § 13–701 provides presumptive sentences); *State v. Nguyen*, 185 Ariz. 151, 153, 912 P.2d 1380, 1382 (App.1996) (§ 13–701 provides a "presumptive term of five years"); *State v. Armendariz*, 127 Ariz. 422, 424, 621 P.2d 928, 930 (App.1980) (describing § 13–701 as authorizing presumptive sentence); *State v. Winans*, 124 Ariz. 502, 503, 605 P.2d 904, 905 (App.1979) (describing § 13–701 as listing presumptive felony sentences and § 13–702 allowing for mitigation or aggravation of those sentences).

ranges for different classes of offenses, with multiple factors determining the range that applies. *See State v. Tarango*, 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996) ("[f]or first-time offenders, former §§ 13–701 and 13–702 provide the range of sentences"); *State v. Martinez*, 127 Ariz. 444, 449, 622 P.2d 3, 8 (1980) ("[t]he presumptive sentence, the range of punishment, and the other circumstances of punishment for non-dangerous offenders are determined in accordance with A.R.S. §§ 13–701 and 13–702(A) and (B)"); *State v. Wagner*, 194 Ariz. 1, ¶ 9, 976 P.2d 250, ¶ 9 (App.1998), *approved in part and vacated in part on other grounds*, 194 Ariz. 310, 982 P.2d 270 (1999) (§ 13–701 "establishes five classes of felonies, with a term of imprisonment presumed to be appropriate for each class of felony"; §§ 13–702, 13–702.01, and 13–702.02 "permit the sentencing judge to impose a term greater than the presumptive up to a specified maximum, or a term less than the presumptive down to a specified minimum, upon a finding and weighing of statutorily defined aggravating or mitigating circumstances").

¶ 26 For the offense of reckless manslaughter, the crime to which McMullen pled guilty, the applicable statutes set a minimum prison term of three years, a maximum term of 12.5 years, and a presumptive term of five years. §§ 13–701, 13–702, 13–702.01. McMullen's plea agreement clearly and explicitly sets forth that range. Based on any eventual findings of aggravating or mitigating circumstances under § 13–702(C) and (D), the respondent judge may thus adjust the sentence within the statutory sentencing range without running afoul of the United States or Arizona Constitutions.[8] *See People v. Rivera*, 62 P.3d 1056, 1057 (Colo.Ct.App.2002) (no *Apprendi* violation when trial court imposed aggravated sentence based on court's "specific [statutory] findings that extraordi-

nary aggravating factors warranted an extended term" beyond presumptive sentencing range); *but see State v. Gould*, 271 Kan. 394, 23 P.3d 801, 814 (2001) (holding Kansas's statutory "scheme for imposing upward departure sentences ... unconstitutional on its face," when defendant "received a sentence beyond the statutory maximum based upon a court finding of certain aggravating factors found by a preponderance of the evidence").

## CONCLUSION

¶ 27 Unlike *Apprendi* and *Ring II*, this case does not present a situation in which a judge-made factual finding, not found by the jury or admitted in a plea agreement, will expose the defendant to a sentence exceeding the statutory maximum. Regardless of how many aggravating circumstances the respondent judge might find under § 13–702(C), the maximum sentence McMullen could receive under § 13–702.01 would be 12.5 years, in accordance with both the applicable statutes and the plea agreement.[9] In short, *Apprendi* and *Ring II* are neither implicated here nor do they render §§ 13–702 or 13–702.01 unconstitutional.

## DISPOSITION

¶ 28 The respondent judge's orders of December 12, 2002, and January 27, 2003, are vacated. Further proceedings consistent with this opinion may proceed in the trial court.

ESPINOSA, C.J. and DRUKE, J. (Retired), concurring.

---

8. The right to a jury trial under Arizona's Constitution, article II, §§ 23, 24, "is substantially the same as that contained within the Sixth Amendment." *Rothweiler v. Superior Court*, 1 Ariz.App. 334, 336, 402 P.2d 1010, 1012 (1965), *aff'd*, 100 Ariz. 37, 410 P.2d 479 (1966).

9. The respondent judge's ruling that the state must establish any aggravating circumstances alleged under § 13–702(C) beyond a reasonable doubt also finds no support in the law. *See*

*Harris v. United States*, 536 U.S. 545, 558, 122 S.Ct. 2406, 2414–15, 153 L.Ed.2d 524, 538 (2002). Indeed, in *Viramontes*, 204 Ariz. 360, ¶ 14, 64 P.3d 188, ¶ 14, a post-*Ring II* decision that did not require our supreme court to address any *Apprendi*-related issues, the court stated: "In non-capital cases, aggravators need only be supported by reasonable evidence," not "proven beyond a reasonable doubt."