IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JUN 22 2005

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2 CA-SA 2005-0011 |
| HON. MICHAEL J. BROWN, Judge of | ) | DEPARTMENT A |
| the Superior Court of the State of | ) | |
| Arizona, in and for the County of Santa | ) | O P I N I O N |
| Cruz, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JONATHAN McMULLEN, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Santa Cruz County Cause No. CR-01-199

JURISDICTION ACCEPTED; RELIEF GRANTED IN PART

George E. Silva, Santa Cruz County Attorney
  By Marc Offenhartz                                                                        Nogales
                                                                        Attorneys for Petitioner

Robert J. Hooker, Pima County Public Defender
  By Robert J. Hooker and Frank P. Leto                                                Tucson
                                                                  Attorneys for Real Party in Interest

Terry Goddard, Arizona Attorney General
 By Nicholas D. Acedo

Phoenix
Attorneys for Amicus Curiae
Arizona Attorney General

H O W A R D, Presiding Judge.

¶1        In this special action, the state contends the respondent judge abused his discretion by finding that statements made by real party in interest Jonathan McMullen in establishing a factual basis for his guilty plea to reckless manslaughter were not admissions of fact for purposes of the United States Supreme Court's decision in *Blakely v. Washington*, ___U.S. ___, 124 S. Ct. 2531 (2004). In its amicus brief, the Arizona Attorney General agrees with that contention and also argues that, by pleading guilty to reckless manslaughter, McMullen waived his right to a jury trial on sentencing factors.[1] The state also contends the respondent judge abused his discretion by finding A.R.S. §§ 13-702 and 13-702.01 unconstitutional and by ruling he lacks authority to empanel a jury and

---

[1] We agree with the attorney general that it is entitled to file an amicus brief in this special action. *See* Ariz. R. Civ. App. P. 16(a), 17B A.R.S. It is purportedly appearing as an entity that is distinct from the Santa Cruz County Attorney, the prosecuting entity in the underlying criminal action. We have, therefore, denied McMullen's motion to strike the attorney general's brief. But, in the content and tone of the brief, the attorney general has not acted as an amicus but, rather, as a second advocate on behalf of the state. We reiterate our admonition in *State v. Resendis-Felix*, 209 Ariz. 292, n.10, 100 P.3d 457, 463 n.10 (App. 2004), *quoting* Rule 31.25 cmt., Ariz. R. Crim. P., 17 A.R.S.: "By seeking only to restate or expand on arguments already made by the state instead of to offer 'background and context for the Court's decision,' the attorney general's brief does not constitute a true amicus curiae brief."

conduct a jury trial on the aggravating circumstances. For the reasons stated below, we accept jurisdiction of this special action and grant partial relief.

## BACKGROUND

¶2 McMullen shot and killed his mother and shot his father and brother, seriously injuring them. Pursuant to a plea agreement, McMullen pled guilty to reckless manslaughter in exchange for the state's dismissal without prejudice of the remaining charges. McMullen established the factual basis for the guilty plea at the change-of-plea hearing, describing what had taken place the night of the shootings. The respondent judge found that the guilty plea was knowing, voluntary, and intelligent and that it was supported by an adequate factual basis, but deferred accepting it until sentencing. After the change-of-plea hearing, the state alleged four aggravating circumstances: "[u]se, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime," § 13-702(C)(2); "[p]resence of an accomplice," § 13-702(C)(4); "[t]he physical, emotional and financial harm caused to the victim or, if the victim has died as a result of the conduct of the defendant, the emotional and financial harm caused to the victim's immediate family," § 13-702(C)(9); and "[l]ying in wait for the victim or ambushing the victim during the commission of any felony." § 13-702(C)(17). But the respondent judge subsequently found §§ 13-702 and 13-702.01 unconstitutional insofar as they permit judges to impose a prison term that exceeds the presumptive sentence based on facts in aggravation found by the judge

3

rather than a jury.[2] The state sought special action relief, which this court granted, *State v. Brown*, 205 Ariz. 325, 70 P.3d 454 (App. 2003), and McMullen sought review by our supreme court.

¶3 While McMullen's petition for review was pending, the United States Supreme Court decided *Blakely*. Thereafter, our supreme court granted review, vacated this court's opinion in *Brown*, and found *Blakely* applies to Arizona's noncapital sentencing statutes. *State v. Brown*, 209 Ariz. 200, ¶ 12, 99 P.3d 15, 18 (2004). The court also concluded McMullen may be sentenced to no greater than the presumptive, five-year prison term unless there is a jury finding, or its equivalent, beyond a reasonable doubt "of one or more of the aggravating circumstances in § 13-702(C)." *Id.* The court remanded the case to the trial court for further proceedings consistent with its decision and *Blakely*.

¶4 On remand, after further briefing and a hearing, the respondent judge rejected the state's argument that, by entering the guilty plea and waiving generally his right to a jury trial, McMullen had waived his right to a jury trial on any sentencing factors. The respondent judge found there was not "a scintilla of evidence" that McMullen had knowingly, voluntarily, and intelligently relinquished a known right. The judge also rejected the state's claim that McMullen was not entitled to a jury trial on the facts in aggravation

---

[2]The legislature recently amended the statutes. After the amendments become effective August 12, 2005, they will require the trier of fact, defined as the jury unless waived, to find beyond a reasonable doubt the circumstances alleged to be in aggravation for sentencing purposes. 2005 Ariz. Sess. Laws, ch. 20, §§ 1, 2.

4

because, at the change-of-plea hearing, he had admitted the facts establishing the circumstances the state had alleged. Furthermore, the judge found portions of §§ 13-702 and 13-702.01 facially unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely*. The judge concluded that the constitutionally infirm provisions cannot be severed from the rest of the statutes, and in the absence of a legislative or supreme court directive in either statutes or rules on how to conduct such a trial, he lacked the authority to convene a jury and hold the trial. The judge set the case for sentencing, making it clear that the maximum prison term he will impose is the presumptive term of five years. The judge granted the state's subsequent request to vacate the sentencing hearing and stay the underlying action so it could seek special action relief.[3] This is that special action.

**SPECIAL ACTION JURISDICTION AND STANDARD OF REVIEW**

¶5 We accept jurisdiction of this special action for a variety of reasons. First, the state has no equally plain, speedy, or adequate remedy by appeal. *See* Ariz. R. P. Spec. Actions 1(a), 17B A.R.S. The order challenged here is interlocutory in nature. Second, "[s]pecial action review is an appropriate means to determine whether there is a right to a jury trial." *Campbell v. Superior Court*, 186 Ariz. 526, 527, 924 P.2d 1045, 1046 (App.

---

[3]The respondent judge ordered the state to file its petition for special action relief in the supreme court. The state filed the special action in this court, however, and McMullen moved to dismiss the petition. We denied that motion, *see* Rule 7(b), Ariz. R. Spec. Actions, and the supreme court denied McMullen's petition to transfer the special action to that court.

5

1996); *see also John C. v. Sargeant*, 208 Ariz. 44, ¶ 8, 90 P.3d 781, 783 (App. 2004) ("A petition for special action is the appropriate method to challenge the denial of a jury trial.").

**¶6**       Moreover, special action review is proper when the issues raised are purely legal questions, questions of first impression, and issues of statewide importance. *ChartOne, Inc. v. Bernini*, 207 Ariz. 162, ¶¶ 8-9, 83 P.3d 1103, 1106-07 (App. 2004). Here, just as Division One of this court noted in *State ex rel. Smith v. Conn*, 209 Ariz. 195, ¶ 3, 98 P.3d 881, 882 (App. 2004), "[t]he issue[s] presented . . . arise[] out of a change in the law effected in *Blakely* and [are] of first impression and statewide importance. Because the issue[s are] likely to recur, and the outcome will have a widespread effect on many cases," it is particularly appropriate that we accept special action jurisdiction. *See Aragon v. Wilkinson*, 209 Ariz. 61, ¶ 5, 97 P.3d 886, 889 (App. 2004) (accepting special action jurisdiction based on conclusion that constitutional issues relating to *Blakely* are of first impression and statewide importance).

**¶7**       We thus accept special action jurisdiction and address the state's contention that the respondent judge abused his discretion. *See* Ariz. R. P. Spec. Actions 3(c) (among questions that may be raised in special action is whether respondent judge abused his or her discretion). In reviewing the respondent judge's rulings, we are mindful that, "when a judge commits an 'error of law . . . in the process of reaching [a] discretionary conclusion,' he may be regarded as having abused his discretion." *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 10, 63 P.3d 282, 285 (2003), *quoting Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434,

6

456, 652 P.2d 507, 529 (1982). Our review of the legal issues raised in this special action is de novo. *See State v. Burdick*, 209 Ariz. 452, ¶ 12, 104 P.3d 183, 187 (App. 2005).

## ENTRY OF GUILTY PLEA AND WAIVER OF JURY TRIAL

¶8 Based on principles it had articulated in *Apprendi*, the Supreme Court held in *Blakely* that a judge may not sentence a defendant to a term beyond the "statutory maximum," or the term authorized solely by the jury's verdict or the defendant's guilty plea, unless the sentence is based on "facts reflected in the jury verdict or admitted by the defendant." ___ U.S. at ___, 124 S. Ct. at 2537 (emphasis deleted). Our supreme court concluded in *Brown* that *Blakely* applies to Arizona's noncapital sentencing statute. 209 Ariz. 200, n.5, 99 P.3d at 19 n.5. The state contended below, after the supreme court had remanded the case, that McMullen had waived his right to a jury trial on the aggravating circumstances when he entered his guilty plea and waived generally his right to a jury trial. The respondent judge disagreed, and the attorney general challenges that ruling in its amicus brief. At oral argument in this special action, the state adopted the attorney general's position on this issue.

¶9 As the respondent judge correctly noted, the state conceded McMullen was not waiving any right he may have to a jury trial on sentencing factors when he entered the guilty plea to reckless manslaughter. During the change-of-plea hearing and a subsequent status hearing, the respondent judge and counsel extensively discussed whether a right to a jury trial on sentencing factors existed. Defense counsel made it clear that McMullen was

7

not waiving that right. The prosecutor conceded at the status hearing that, although McMullen had given "up his right to a jury trial with [respect to] the charges pending before him," he had not "given . . . up" his right to a jury trial on sentencing facts. Furthermore, the respondent judge noted in his order that McMullen had only waived the right to a jury trial on the "substantive offense . . . and not to the facts [in aggravation] set forth in [§ 13-702(C)]."

¶10        The state did not challenge the latter finding in the first special action in this court or on review to the supreme court, nor could it have, given its concession. Indeed, in the state's first special action proceeding, this court expressly found that the state was not challenging that ruling and that the state had, in fact, "conceded below that McMullen had not 'given . . . up' any right he might have to a jury trial on any alleged aggravating circumstances." *Brown*, 205 Ariz. 325, n.2, 70 P.3d 454, 456 n.2. The supreme court implicitly confirmed that the state had not challenged this part of the respondent judge's ruling when it noted that the only issue the state had presented to this court had been "whether the 'statutory maximum' for *Apprendi* purposes was the five-year presumptive sentence (as the superior court held) or the twelve-and-one-half-year super-aggravated sentence (as the State's special action contended)." *Brown*, 209 Ariz. 200, ¶ 13, 99 P.3d at 18. The state is judicially estopped from adopting a position in this special action contrary to its previous position in the trial court. *See State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996).

¶11 At oral argument, however, when the state adopted the attorney general's brief and contended McMullen had waived his right to a jury trial on the sentencing factors when he waived the right to a jury trial generally, it insisted the issue had not been conceded in the trial court. Rather, the prosecutor explained his comment had to be viewed in the context of his statement, made before *Blakely* or *Brown* were issued, that McMullen never even had such a right to waive. But even assuming the state had made no binding concession on this point, we find no merit to this waiver argument. The state correctly notes that McMullen waived his right to a jury trial in the plea agreement and that he did so orally at the change-of-plea hearing. But that right related only to the guilt phase on the substantive offense. Before a defendant may be deemed to have waived a constitutional right such as the right to a jury trial, it must be clear that the defendant knowingly, voluntarily, and intelligently relinquished that right. *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 1712 n.5, 23 L. Ed. 2d 274, 280 n.5 (1969); *see also* Ariz. R. Crim. P. 17.1(b), 18.1, 16A and 17 A.R.S. (setting forth criteria for pleading guilty and waiving right to jury trial); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938) (defendant's waiver of constitutional rights may only be based on intentional relinquishment of known right).

¶12 In *State v. Munninger*, 209 Ariz. 473, ¶ 12, 104 P.3d 204, 209 (App. 2005), Division One of this court applied this principle to the question whether a defendant convicted and sentenced after a jury trial had waived the right to a jury trial on the

9

aggravating facts by failing to assert the right in the trial court. Division One concluded that, like the right to a jury trial generally, waiver of the right to a jury trial on sentencing factors must be knowing and voluntary. We agree. And we will not infer that a defendant has waived the jury trial right established in *Blakely* based solely on a general waiver of the right to a jury trial on guilt or innocence. *Accord Aragon*, 209 Ariz. 61, ¶ 12, 97 P.3d at 890 (finding that pleading defendant had not breached plea agreement by insisting on jury trial on sentencing factors and that defendant had waived right to jury trial "for the guilt phase of the proceedings," not such right as to sentencing factors); *State v. Gornick*, 102 P.3d 734, 741 (Or. Ct. App. 2004) (refusing to infer from defendant's admission to indictment allegations and general guilty plea that defendant had waived right to jury trial pursuant to *Blakely*).

¶13 The plea agreement itself was limited to McMullen's pleading guilty to reckless manslaughter. There was no mention in the agreement of the right to a jury trial on sentencing factors, nor did it contain any factual admissions beyond the elements of the offense. The colloquy between the respondent judge and McMullen at the November 2002 change-of-plea hearing as to the rights McMullen was waiving was similarly limited. The respondent judge reviewed the plea agreement with McMullen, making certain he understood it and the rights he was waiving by entering the guilty plea. The judge explained to McMullen, inter alia, that he was pleading guilty to the reckless manslaughter of his mother and that the two charges of attempted first-degree murder involving his father and

10

brother would be dismissed. The judge also informed McMullen that he was "giving up certain basic constitutional rights," including the "right to trial by jury," the right to remain silent, and "the right to be presumed innocent and to be found guilty only if this case against you is proved beyond a reasonable doubt." It is clear the discussion only pertained to the consequences of pleading guilty to the offense. The discussion did not relate to the right to a jury trial on the aggravating circumstances. Thus, the respondent judge did not err by finding McMullen's waiver of the right to a jury trial was not a knowing, voluntary and intelligent waiver as to his right to have a jury determine the existence of facts to support an aggravated sentence.

**McMULLEN'S ADMISSIONS AT THE CHANGE-OF-PLEA HEARING**

¶14        In establishing the factual basis for his guilty plea, McMullen described the events that had resulted in the charges. He said that, on the day of the shooting, he and his friend, Jeremy H., "were talking about taking [McMullen's mother's] car and driving to Willcox, Arizona, but [they] were afraid that [they] were going to get caught. So [McMullen] decided to shoot the people at the house . . . ." He took a .22 rifle from his father's room, choosing it as a weapon instead of a knife because it would be "a quicker death." He explained it was late, around midnight, and, knowing his mother would be asleep, he and Jeremy threw something at her bedroom door to waken her. When she came out of the room, he shot her seven times. His younger brother then came into the room, and McMullen shot him twice. McMullen then shot his mother twice more because he "heard

11

a sound from [her] that she was still alive." McMullen's father walked into the room, and McMullen shot him once. After the rifle clicked because it was out of shells, the father disarmed McMullen, and then called 911. Meanwhile, McMullen and Jeremy left the house in a family car.

¶15 The state asserts that McMullen's statements during this exchange may be deemed "facts . . . admitted by the defendant" for purposes of *Blakely* and *Apprendi*. *Blakely*, ___ U.S. at ___, 124 S. Ct. at 2537; *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2364-65, 147 L. Ed. 2d at 455. Consequently, the state maintains, because McMullen's admissions establish the aggravating circumstances the state alleged after the change-of-plea hearing—use of a deadly weapon; presence of an accomplice; physical, emotional, and financial harm to the victim or the victim's immediate family; and lying in wait for the victim or ambushing the victim—the court is authorized to rely on them at sentencing without a jury finding.

¶16 In neither *Apprendi* nor *Blakely* did the Supreme Court specify what it meant by "facts . . . admitted by the defendant" for purposes of determining the statutory maximum prison term. *Blakely*, ___ U.S. at ___, 124 S. Ct. at 2537; *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2364-65, 147 L. Ed. 2d at 455. Nor did the Court address the level of constitutional protection a defendant should be afforded before the defendant's admissions

may be regarded as admitted facts for *Blakely* purposes.[4]  But the Minnesota Court of

Appeals addressed this question in *State v. Hagen*, 690 N.W.2d 155 (Minn. Ct. App. 2004).

The court reasoned that, after *Blakely* and *Apprendi*, such factors essentially have become

elements of an offense and a defendant has the right to require the state to prove those

elements to a jury beyond a reasonable doubt.  *Id.* at 159.  The court stated that, because

the effect of the admission was to waive the right to a jury trial, the admission itself had to

be knowing, voluntary, and intelligent. When the defendant in *Hagen* entered his guilty

plea, however, he, like McMullen, was only told of his right to a jury trial in the context of

entering the plea to the offense.  "[H]e was not informed that he had a right to a jury

determination on any fact used to support an upward sentencing departure." *Id.*

---

[4]In *State v. Ring*, 204 Ariz. 534, ¶ 93, 65 P.3d 915, 944 (2003) (*Ring III*), decided on remand after the United States Supreme Court decided *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) (*Ring II*), our supreme court used similar language with respect to aggravating circumstances in a capital case: "In cases in which a defendant stipulates, confesses or admits to facts sufficient to establish an aggravating circumstance, we will regard that factor as established." But again, the supreme court did not specify what it meant by such a stipulation or admission or what is required constitutionally before either may be valid.  We find it significant, however, that in cases decided after *Ring III* that mention this portion of the decision, the court merely evaluated the admission in the context of all circumstances it considered in conducting a harmless error review resulting from a judge's determination of the aggravating circumstances rather than a jury.  *See, e.g., State v. Armstrong*, 208 Ariz. 360, ¶¶ 10, 11, 93 P.3d 1076, 1079-80 (2004); *State v. Montano*, 206 Ariz. 296, ¶ 14, 77 P.3d 1246, 1249  (2003); *State v. Sansing*, 206 Ariz. 232, ¶¶ 5, 8, 77 P.3d 30, 33-34 (2003).  The court did not, in these cases, find that the admissions or stipulations had resulted in a waiver of the right to a jury trial established in *Ring II*.

**¶17** Relying in part on *Hagen*, the Minnesota court went a step further in *State v. Thompson*, 694 N.W.2d 117 (Minn. Ct. App. 2005). Many of the defendant's admissions in that case had been made at the change-of-plea hearing; the defendant had admitted facts that had been alleged in the charging document. The court concluded the defendant had not "knowingly, voluntarily, and intelligently waived" her right to a jury trial under *Blakely*. *Id*. at 123. It reached that conclusion even though *Blakely* was decided the day before she was sentenced, and the court and the parties had specifically discussed it.

**¶18** In a somewhat different context, the Oregon Court of Appeals in *Gornick*, refused to infer from a defendant's admitting the allegations of the indictment and from a general guilty plea that the defendant had waived the right to a jury trial on sentencing factors as articulated in *Blakely*, decided after the defendant had been sentenced to an aggravated prison term. Relying on *Boykin*, the court stated that "[a]ppellate courts will not presume a valid waiver of fundamental constitutional rights from a silent record." *Gornick*, 102 P.3d at 740.

**¶19** No Arizona decision has addressed directly the criteria for determining when a defendant's statements may be regarded as factual admissions for purposes of *Blakely* and a waiver of the right to a jury trial. *But see State v. Aleman*, 210 Ariz. 232, ¶ 42, 109 P.3d 571, 584 (App. 2005) (Flórez, J., concurring in part and dissenting in part) (finding *Boykin* standard must be satisfied before defendant's admissions of fact may be used for sentencing purposes); *Aleman*, ¶ 39 (Espinosa, J., specially concurring) (rejecting notion that "routine

14

stipulation or admission by a defendant" used to establish element of offense or factual basis for plea would require independent *Boykin* waiver before it may be used for sentencing purposes); *see also State v. Miranda-Cabrera*, 209 Ariz. 220, ¶ 29, 99 P.3d 35, 41-42 (App. 2004) (finding, without further analysis, that defendant's admissions at trial were admissions of fact under *Blakely* and that defendant was not entitled to have a jury determine such facts for sentencing purposes). In *State v. Virgo*, 190 Ariz. 349, 353-54, 947 P.2d 923, 927-28 (App. 1997), however, Division One of this court vacated the defendant's sentence for possession of over four pounds of marijuana because, even though the parties had stipulated that the marijuana seized from his car had weighed thirty-five pounds and the court had accepted that stipulation, the jury had not been asked to and had not specifically found the weight of the drugs. Reducing the offense from a class four to a class six felony and remanding the case for resentencing, the court reasoned that, "[b]ecause a jury has the power to return a 'not guilty' verdict despite the facts, a judge may not rely on a stipulated fact as conclusively proven unless a jury finds it proven—no matter how uncontroverted the evidence." *Id*. at 354, 947 P.2d at 928. The court concluded:

> We hold a jury must actually find a defendant guilty of an element before a judge may use that element to increase the sentence or classification of offense. The right to a jury trial prevents a sentencing judge from increasing the classification of an offense based on a finding not explicitly adopted by the jury in its verdict.

*Id.*

15

¶20　　　　In *Apprendi* and *Blakely*, the Supreme Court recognized that there is no real "distinction between 'elements' [of an offense] and 'sentencing factors.'" *Apprendi*, 530 U.S. at 494, 120 S. Ct. at 2365, 147 L. Ed. 2d at 457; *see also Blakely*, ___ U.S. at ___ n.6, 124 S. Ct. at 2537 n.6 (acknowledging that federal constitution limits states from reclassifying elements of offense as sentencing factors); *People v. Sengpadychith*, 27 P.3d 739, 745 (Cal. 2001) (finding that, under *Apprendi*, aggravating factors, like sentence enhancements, are "'functional equivalent' of a single 'greater' crime"), *quoting Apprendi*, 530 U.S. at 494 n.19, 120 S. Ct. at 2365 n.19, 147 L. Ed. 2d at 457 n.19. The elements-of-the-offense principles articulated in *Virgo* apply with equal force when, as here and in *Apprendi* and *Blakely*, the accused is a pleading defendant. The plea process simply takes the place of the jury finding on the elements of the offense. Thus, as the court recognized in *Virgo*, the facts that may be deemed adjudicated are only those facts "explicitly adopted" by the finding of guilt, that is, the elements of the offense and any facts implicit in those elements. *Virgo*, 190 Ariz. at 354, 947 P.2d at 928; *see State v. Thompson*, 200 Ariz. 439, ¶ 7, 27 P.3d 796, 798 (2001) ("One is convicted when there has been a determination of guilt by verdict, finding, or the acceptance of a plea.").

¶21　　　　We therefore conclude that a trial court may consider as appropriate aggravating factors under *Blakely* only the elements of the offense a defendant admits at a change-of-plea hearing or those facts that are inherent in the finding of guilt and that have been established either by admission or stipulation after the defendant has validly waived

16

the right to a jury trial.[5] But facts that a defendant admits during a change-of-plea colloquy that go beyond the elements of the offense or the facts inherent in the finding of guilt may not be regarded as established because there has been no jury finding or its equivalent on such facts.

¶22 McMullen waived his right to have a jury determine he had recklessly caused the death of his mother. *See* A.R.S. § 13-1103(A)(1). He admitted at the change-of-plea hearing having shot and killed his mother. The respondent judge properly could and obviously did consider the admissions McMullen made during the change-of-plea proceeding insofar as they were necessary to establish the elements of the offense. But McMullen clearly admitted facts beyond those that established the elements of reckless manslaughter. Those admissions could establish three of the four aggravating circumstances the state later alleged. And, although he made those admissions, he did not intentionally relinquish his right to have a jury decide the facts necessary to establish the alleged aggravating circumstances.[6] *See United States v. Jones*, 108 F.3d 668, 675-76 (6th Cir.

---

[5]These elements must, of course, be appropriate under § 13-702 and any other sentencing statute before they may be considered at sentencing. *See, e.g.*, § 13-702(c)(1) and (c)(2).

[6]We distinguish between evidentiary admissions, *see* Rule 801(d)(2), Ariz. R. Evid., 17A A.R.S., and admissions that result in a waiver of the right to a jury trial. We express no opinion on whether McMullen's admissions may be admissible at a jury trial on the aggravating circumstances. Rather, we are answering the narrow question whether the same requirement for validly waiving the right to a jury trial generally applies to admissions of fact that effectively waive the right to a jury trial on sentencing factors.

17

1997) (Ryan, J., concurring) (defendant does not waive right to jury trial on element of offense by stipulating to factual basis for element). We will not infer such an intent from the mere fact that the admissions were made.

¶23 Our supreme court's decision in *State v. Murdaugh*, 209 Ariz. 19, 97 P.3d 844 (2004), does not require a different result. There, the defendant attempted to have his guilty plea vacated because he had not been aware he had a right to have a jury decide whether he should be sentenced to death. The court found the defendant had not established that the identity of the sentencing decision maker had had any effect on his decision to plead guilty. *Id.* ¶ 47. McMullen is not claiming his guilty plea is involuntary; he simply is invoking his right to a jury trial on sentencing factors.[7]

---

[7]Our supreme court's decision in *State v. Barnes*, 167 Ariz. 186, 805 P.2d 1007 (1991), does not require a different result either. In *Barnes*, the defendant pled guilty to possession of drug paraphernalia with one prior felony conviction, which was used to enhance the sentence; she stipulated to imposition of an aggravated, enhanced, three-year prison term. The supreme court concluded that Barnes had clearly understood at the time she pled guilty that she was not only admitting the facts necessary for the offense, she was admitting she had a prior felony conviction. She understood precisely what sentence she would receive if the court accepted the guilty plea. *Id.* at 190, 805 P.2d 1011. We think this may well have been the kind of admission or stipulation the *Blakely* majority had in mind when it stated that a pleading defendant may relinquish *Apprendi* rights:

> If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial.

___ U.S. at ___, 124 S. Ct. at 2541. *See* discussion at ¶ 25, *infra*.

18

¶24      We acknowledge there is language in both *Apprendi* and *Blakely* that could

be interpreted to suggest admissions include statements by a defendant in a change-of-plea

proceeding or colloquy.[8] *See also State v. Ring*, 204 Ariz. 534, ¶ 93, 65 P.3d 915, 944

(2003) (*Ring III*), discussion at n. 4, *supra*.  In *Blakely*, for example, after the Supreme

Court defined the statutory maximum prison term for purposes of *Apprendi* as "the

maximum sentence a judge may impose solely on the basis of the facts reflected in the jury

verdict or admitted by the defendant," ___ U.S. at ___, 124 S. Ct. at 2537 (emphasis

deleted), the Court added:  "[N]othing prevents a defendant from waiving his *Apprendi*

rights.  When a defendant pleads guilty, the State is free to seek judicial sentence

enhancements so long as the defendant either stipulates to the relevant facts or consents to

judicial factfinding." ___ U.S. at ___, 124 S. Ct. at 2541.  *Apprendi* has similar language.

---

[8]Other courts, indeed, have reached that conclusion, but most have simply skirted the question of whether admissions during a plea colloquy or in another context must be knowing, voluntary, and intelligent before they may be regarded as a waiver of the defendant's right to a jury trial on sentencing factors. *See, e.g., United States v. Rubbo*, 396 F.3d 1330, 1332-35 (11th Cir. 2005) (although court found defendant's claims did not fall outside waiver of right to appeal, it suggested statements in plea colloquy are admissions for *Blakely* purposes); *United States v. Thomas*, 389 F.3d 424, 426 (3d Cir. 2004) (suggesting four possible meanings of the term "facts admitted," including statements made in plea colloquy); *United States v. Mueffelman*, 327 F. Supp. 2d 79, 84 (D. Mass. 2004) (stating that *Blakely* requires that facts must be found by a jury "or admitted by the defendant in a plea agreement or plea colloquy"); *United States v. Marrero*, 325 F. Supp. 2d 453, 456 (S.D.N.Y. 2004) (stating that facts must be "admitted or stipulated by the defendant, as in his plea allocution or in an agreement with the Government"); *State v. Hagar*, 105 P.3d 65, 67 (Wash. Ct. App. 2005) (finding stipulation to facts was "integral part" of plea agreement but noting that "stipulation to real facts did not validly waive [the defendant's] Sixth Amendment rights").

530 U.S. at 487-88, 120 S. Ct. at 2361-62, 147 L. Ed. 2d 453-54. In neither case did the Supreme Court directly address whether such admissions or stipulations must be accompanied by a knowing, voluntary, and intelligent waiver. But, we think the *Blakely* majority suggested as much when responding to the dissent's claim that *Apprendi* could be detrimental to pleading defendants because they would be deprived "of the opportunity to argue sentencing factors to a judge." ___ U.S. at ___, 124 S. Ct. at 2541. The Court stated:

> [N]othing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. . . . If *appropriate waivers* are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial. We do not understand how *Apprendi* can possibly work to the detriment of those who are free, if they think its costs outweigh its benefits, to render it inapplicable.

*Id.* (emphasis added).[9]

---

[9]Our supreme court noted in *Brown*: "[T]he State . . . argues that no jury trial is needed because McMullen made certain statements in the plea colloquy which the State characterizes as 'admissions' of aggravating circumstances." 209 Ariz. 220, n.4, 93 P.3d at 18 n.4. But because the issue had not been presented to the trial judge or this court, the supreme court refused to address it. *Id*.

**¶25** We find nothing in either *Blakely* or *Apprendi* foreclosing our conclusion that "appropriate waivers" with respect to admissions or stipulations for the purpose of deciding sentencing facts must be the knowing, voluntary, and intelligent waiver of the right to a jury trial. To the contrary, when the *Blakely* majority suggested that defendants can consent to judicial fact-finding after an "appropriate waiver[]" of their right to a jury trial on aggravating factors, we can only conclude that it was referring to the pre-existing standards for the waiver of the right to a jury trial—those set forth in *Boykin* and its progeny. In neither *Apprendi* nor *Blakely* did the Court focus on the contents of the underlying plea colloquys in analyzing whether those defendants had a right to jury trial as to any factual determinations that would have rendered them eligible for an aggravated sentence. Moreover, our conclusion is in accord with prior Arizona cases on the effect of stipulations and the requirement that they be presented to the jury. *See, e.g., State v. Lopez*, 209 Ariz. 58, ¶ 7, 97 P.3d 883, 885 (App. 2004); *State v. Newnom*, 208 Ariz. 507, ¶ 5, 95 P.3d 950, 951 (App. 2004); *Virgo*, 190 Ariz. at 353-54, 947 P.2d at 927-28. We see no justification for treating sentencing factors differently after *Blakely.*

**¶26** The state and the attorney general claim that there is authority from other jurisdictions supporting the notion that admissions, particularly those made during a plea colloquy, may be regarded as "facts admitted by the defendant" for purposes of *Blakely* without requiring that the defendant have the same level of understanding as in waiving the right to a jury trial in pleading guilty. *See, e.g., Thomas*, 389 F.3d at 426 (setting forth

possible interpretations of what is an admission for purposes of *Blakely*), *see also* note 7, *supra*. Most of those decisions, however, do not address squarely the question before us and simply treat the defendant's statements as *Blakely*-exempt admissions without thoroughly analyzing the constitutional implications of such admissions. And in at least one case relied on by the attorney general, the defendant was deemed to have stipulated to specific facts that were later used at sentencing because they had been set forth in the plea agreement, which was not the case here. *See Hagar*, 105 P.3d at 67.

¶27 We find the reasoning of the prior Arizona cases and of the Minnesota and Oregon courts more constitutionally sound. Because admissions of fact at a change-of-plea proceeding beyond those necessary to establish the elements of an offense are not presented to a jury and, in this case, were not admitted for sentencing purposes pursuant to a valid waiver of the right to a jury trial, we hold such admissions must be pursuant to a knowing, voluntary, and intelligent waiver of the defendant's right to have a jury find facts that may then constitute aggravating circumstances for sentencing purposes.

## CONSTITUTIONALITY OF §§ 13-702 AND 13-702.01 AND AUTHORITY TO CONDUCT A JURY TRIAL FOR SENTENCING

¶28 In its petition for special action, the state contends the respondent erred in concluding that he lacked the authority to convene a jury for a trial on sentencing factors. The state also contends the portions of the statutes that are no longer constitutional in light

22

of *Blakely* may be severed and the remaining portions may be applied in a constitutional manner.

¶29 Both divisions of this court have rejected rulings similar to the respondent judge's on the unconstitutionality of Arizona's noncapital sentencing statutes in the wake of *Blakely*.[10] *See State v. Timmons*, 209 Ariz. 403, ¶¶ 18-19, 103 P.3d 315, 320 (App. 2005); *State ex rel. Smith v. Conn*, 209 Ariz. 195, ¶ 6, 98 P.3d 881, 883 (App. 2004); *see also State v. Johnson*, ___ Ariz. ___, ¶ 14, 111 P.3d 1038, 1042 (App. 2005) (summarily rejecting challenge to constitutionality of Arizona's noncapital sentencing statutes in light of *Blakely*); *Aragon v. Wilkinson*, 209 Ariz. 61, ¶ 15, 97 P.3d 886, 891 (App. 2004) ("*Blakely* does not impede the imposition of an aggravated sentence because the court can convene a jury to find facts that may support imposition of an aggravated sentence."). We continue to abide by those decisions.

¶30 Finally, we agree with the state that Rule 19.1, Ariz. R. Crim. P., 17 A.R.S., provides additional authority to trial judges for convening a jury trial on sentencing factors. It sets forth the procedures "[i]n all prosecutions in which a non-capital sentencing allegation required to be found by a jury is alleged." It further provides that, after finding

---

[10]In *State v. Brown*, 209 Ariz. 200, ¶¶ 13-15, 99 P.3d 15, 18-19 (2004), our supreme court refused to address any issue other than "whether the 'statutory maximum' for *Apprendi* purposes was the five-year presumptive sentence (as the superior court held) or the twelve-and-one-half year super-aggravated sentence (as the State's special action contended)." It did not, therefore, address the constitutionality of A.R.S. §§ 13-702 and 13-702.01 in light of *Blakely*, which had yet to be decided when this court issued its decision in *Brown*.

a defendant guilty, "the issue of the non-capital sentencing allegation required to be found by a jury shall then be tried." Ariz. R. Crim. P. 19.1(b)(2). Moreover, as we previously noted, it is possible that by the time McMullen is sentenced, the amended versions of §§ 13-702 and 13-702.01 will be in effect. *See* note 2, *supra.*

## CONCLUSION

¶31        For the reasons stated above, we accept jurisdiction of this special action. We conclude the respondent judge did not abuse his discretion in finding statements McMullen made during the change-of-plea colloquy beyond those necessary to establish the elements of the offense are not admissions of fact for purposes of *Blakely*. McMullen did not knowingly, voluntarily, and intelligently waive his right to a jury trial on the alleged aggravating circumstances. The judge did err, however, in ruling the state may not prove to a jury beyond a reasonable doubt the aggravating circumstances it has alleged. The judge has the authority to conduct such a trial, and the sentencing statutes can be applied in a constitutional manner. Therefore, we grant the state partial relief and vacate those portions of the ruling that are inconsistent with this decision.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge


_____
PETER J. ECKERSTROM, Judge