IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

OLIN GENE TAYLOR,                      )
                                       )
                    Petitioner,        )
                                       )
        v.                             )
                                       )
HON. MICHAEL CRUIKSHANK, Judge         )
of the Superior Court of the State of  )
Arizona, in and for the County of Pima,)
                                       )
                    Respondent,        )
                                       )
        and                            )      2 CA-SA 2006-0067
                                       )      2 CA-SA 2006-0078
THE STATE OF ARIZONA,                  )      (Consolidated)
                                       )      DEPARTMENT B
                    Real Party in Interest. )
                                       )      O P I N I O N
_____)
                                       )
JOHN ADRIAN JOHNSON,                   )
                                       )
                    Petitioner,        )
                                       )
        v.                             )
                                       )
HON. GUS ARAGON, Judge of the          )
Superior Court of the State of Arizona, in )
and for the County of Pima,            )
                                       )
                    Respondent,        )
                                       )
        and                            )
                                       )
THE STATE OF ARIZONA,                  )
                                       )
                    Real Party in Interest. )
                                       )
_____)

SPECIAL ACTION PROCEEDINGS

Cause Nos. CR-20060622 and CR-20060845

JURISDICTION ACCEPTED; RELIEF GRANTED

---

Robert J. Hooker, Pima County Public
Defender                                                                      Tucson
  By Walter Palser                          Attorneys for Petitioner Taylor


Robert J. Hooker, Pima County Public                                          Tucson
Defender                              Attorneys for Petitioner Johnson
  By Chiko F. Makanjuola-Oyolu

                                            Tucson
Barbara LaWall, Pima County Attorney          Attorneys for Real Party in Interest
  By Taren M. Ellis and Shawn Jensvold

---

E C K E R S T R O M, Presiding Judge.


**¶1**        In separate special action proceedings that we have consolidated *sua sponte*, petitioners Olin Gene Taylor and John Adrian Johnson seek special action relief from the respondent judges' denial of their motions to dismiss the indictments filed against them in their underlying criminal cases. In their motions, Taylor and Johnson asserted the state lacks jurisdiction to try them on the charges because the applicable limitation period has expired. We reluctantly agree.

**Jurisdiction**

¶2 The issue presented is appropriate for the exercise of our special action jurisdiction because it is purely a question of law, requiring us to construe a statute. *See State v. Brown*, 210 Ariz. 534, ¶ 6, 115 P.3d 128, 131 (App. 2005); *State ex rel. Smith v. Conn*, 209 Ariz. 195, ¶ 3, 98 P.3d 881, 882 (App. 2004). In addition, although the statute has been amended since the charged offenses were committed, the issue is likely to recur with further technological advances in identifying suspected perpetrators of decades-old crimes, as evidenced by the near-contemporaneous filing of these two underlying cases involving similar facts and raising the identical issue. *See Conn*, 209 Ariz. 195, ¶ 3, 98 P.3d at 882. Therefore, this is a matter of statewide importance, an additional reason for accepting special action jurisdiction. *See Anderson v. Contes*, 212 Ariz. 122, ¶ 4, 128 P.3d 239, 241 (App. 2006). Moreover, because we conclude the limitation period has expired, accepting jurisdiction eliminates the time and expense of conducting futile trials and ends the cases. *See Emmons v. Superior Court*, 192 Ariz. 509, ¶ 8, 968 P.2d 582, 585 (App. 1998); *Sw. Coop. Wholesale v. Superior Court*, 13 Ariz. App. 453, 455, 477 P.2d 572, 574 (1970). Accordingly, we accept jurisdiction of the special actions.

**Taylor Factual and Procedural Background**

¶3 The facts pertinent to a resolution of these cases are few and undisputed. On June 4, 1994, R. reported to the Tucson Police Department (TPD) that she had been sexually assaulted in her residence by an unknown man. On January 18, 2005, nearly

3

eleven years later, a senior criminalist at the TPD Crime Laboratory was asked to analyze the deoxyribonucleic acid (DNA) in the semen sample recovered from R. The criminalist analyzed the DNA on October 7, 2005, and submitted the resulting DNA profile to a state database connected to a national database known as the Combined DNA Index System (CODIS). On October 13, she received notice that a known profile matched the profile she had submitted. On February 16, 2006, a Pima County grand jury indicted Taylor for kidnapping, first-degree burglary, and two counts of sexual assault, all class two felonies; sexual abuse, a class five felony; and aggravated assault with a deadly weapon or dangerous instrument, a class three felony. The indictment alleged that the offenses were committed on June 4, 1994.

**¶4** Taylor moved to dismiss the indictment, arguing the limitation period in A.R.S. § 13-107(B) had expired and the state therefore lacked jurisdiction to try him for the offenses. Respondent Judge Cruikshank conducted an evidentiary hearing at which the parties presented extensive evidence on the creation of, and the TPD Crime Laboratory's connection to, CODIS, the national database of DNA profiles of convicted offenders. At the conclusion of the hearing, Judge Cruikshank denied the defense motion, finding the state could not reasonably have matched Taylor's DNA profile to the DNA profile of the semen sample obtained from R. before May 2000. Accordingly, the respondent concluded, the indictment filed in February 2006, within seven years of May 2000, was timely.

**Johnson Factual and Procedural Background**

¶5        On April 26, 1994, J. reported to TPD that she had been sexually assaulted. A semen sample obtained from J. was tested on June 7, 1994. The City-County Crime Laboratory, now the TPD Crime Laboratory, analyzed one marker of the DNA in the sample on October 2, 1998, to see if it matched any records in the laboratory's informal local database. The result obtained did not match any locally held record.

¶6        In September 2005, the state secured a DNA sample from Johnson to confirm a match found in the CODIS database between his DNA profile and the DNA profile of a blood sample recovered from a 2003 burglary in Tucson. In February 2006, the TPD Crime Laboratory analyzed the DNA in the semen sample obtained from J. and submitted the resulting profile to CODIS. It matched the profile of the DNA sample Johnson had previously provided as part of the burglary investigation. A Pima County grand jury indicted Johnson on March 6, 2006, on three counts of sexual assault, class two felonies; two counts of sexual abuse, class five felonies; and kidnapping, a class two felony, all alleged to have been committed on April 26, 1994.

¶7        Johnson moved to dismiss the indictment, arguing that the statute of limitation had expired. Respondent Judge Aragon denied the motion after an evidentiary hearing, ruling the state could not have connected the evidence left by the suspect in the sexual assault to the perpetrator "until the Tucson Police Crime Lab was connected to CODIS . .

. in November, 2004"[1] and that Johnson's DNA profile had been connected to the sexual assault evidence on February 10, 2006. As a result, the respondent found the limitation period had begun on February 10, 2006, "when the State had probable cause of the crime and the connection" to Johnson.

## Discussion

Applicable Statute

¶8        The parties agree that the applicable statute of limitation is the statute in effect when the offenses were committed in 1994. We agree as well. *See Martin v. Superior Court*, 135 Ariz. 99, 100, 659 P.2d 652, 653 (1983) (absent expressed intent to apply criminal statutes of limitation retroactively, statutes apply to offenses committed after effective date of statutory changes); *State v. Jackson*, 208 Ariz. 56, n.3, 90 P.3d 793, 796 n.3 (App. 2004) (same); *State v. Escobar-Mendez*, 195 Ariz. 194, n.6, 986 P.2d 227, 231 n.6 (App. 1999) (same); *see also* A.R.S. § 1-244 (no statute is retroactive unless it expressly says so).

¶9        In addition, Arizona follows the minority view that criminal statutes of limitation are jurisdictional, constituting "a limitation upon the power of the sovereign to act against the accused." *State v. Fogel*, 16 Ariz. App. 246, 248, 492 P.2d 742, 744 (1972), *quoted with approval in Price v. Maxwell*, 140 Ariz. 232, 234, 681 P.2d 384, 386 (1984),

---

[1]The criminalist actually testified that the laboratory had been connected to CODIS in November 2000.

and *Martin*, 135 Ariz. at 100, 659 P.2d at 653; *see Jackson*, 208 Ariz. 56, n.11, 90 P.3d at 799 n.11 (noting that basis for holding in *Fogel* has since been questioned). Under our case law, "[s]tatutes of limitation are to be construed liberally in favor of the accused and against the prosecution." *Fogel*, 16 Ariz. App. at 248, 492 P.2d at 744. And, once a defendant presents reasonable evidence that a statutory period has expired, the state bears the burden of establishing by a preponderance of the evidence that it has not. *Jackson*, 208 Ariz. 56, ¶ 26, 90 P.3d at 800.

Standard of Review

**¶10**        We review for an abuse of discretion the respondent judges' rulings on Taylor's and Johnson's motions to dismiss their criminal prosecutions. *See State v. Olcan*, 204 Ariz. 181, ¶ 6, 61 P.3d 475, 477 (App. 2003); *State v. Sanchez*, 192 Ariz. 454, ¶ 4, 967 P.2d 129, 131 (App. 1998). "A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *Jackson*, 208 Ariz. 56, ¶ 12, 90 P.3d at 796. This case requires us to interpret a statute, an exercise we perform *de novo*. *See State v. Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d 218, 220 (App. 2002). In doing so, we determine the intent of the legislature in adopting the statute, the best evidence of which is the statutory language. *Id.* We resort to additional considerations "such as the statute's context, history, subject matter, effects and consequences, spirit, and purpose" only if the language proves to be ambiguous. *Id.*

Former A.R.S. § 13-107(B)

¶11        We begin our analysis with the statute in effect in April and June 1994. Section 13-107(B), A.R.S., then read:

> Except as otherwise provided in this section, prosecutions for . . . offenses [other than homicide, misuse of public monies, or falsification of public records] must be commenced within the following periods after actual discovery by the state or the political subdivision having jurisdiction of the offense or discovery by the state or such political subdivision which should have occurred with the exercise of reasonable diligence, whichever first occurs:
>
> 1. For a class 2 through a class 6 felony, seven years.

1985 Ariz. Sess. Laws, ch. 223, § 1. Under former § 13-107(C), "a prosecution is commenced when an indictment . . . is filed." 1985 Ariz. Sess. Laws, ch. 223, § 1.

¶12        From a grammatical point of view, the statute is less than clear. It does not expressly say what the state must actually or constructively discover. For that reason, this court analyzed the statute at length in *Jackson*. There, we concluded that "the seven-year limitation period under [§ 13-107(B)] begins 'when the authorities know or should know in the exercise of reasonable diligence that there is probable cause to believe a criminal [offense] has been committed.'" 208 Ariz. 56, ¶ 30, 90 P.3d at 802, *quoting State v. Wilson*, 573 N.W.2d 248, 254 (Iowa 1998) (second alteration in *Jackson*). And, without discussion, Division One of this court also read the statute as applying to discovery of the offense. *Escobar-Mendez*, 195 Ariz. 194, ¶¶ 13, 14, 19, 986 P.2d at 230-31.

¶13     But we expressly noted in *Jackson* that we were not addressing the issue raised in these special actions—whether the statute requires discovery of an offense or discovery of the offender. 208 Ariz. 56, n.14, 90 P.3d at 801 n.14.[2] Therefore, we again address the statute and analyze it in light of the issues raised here. Because we find the language of the statute is unclear, we also consider other indications of its meaning, including the history and purpose of the statute. *See Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d at 220.

History of Statute

¶14     The history of the statute supports our preliminary suggestion in *Jackson* that the statute begins to run from the discovery of the offense. Section 13-107 was adopted as part of the 1978 criminal code revision.[3] 1977 Ariz. Sess. Laws, ch. 142, § 39, effective Oct. 1, 1978, ch. 142, § 188; 1978 Ariz. Sess. Laws, ch. 201, § 90; *see* 1 Rudolph J. Gerber, *Criminal Law of Arizona* 1 (2d ed. 1993). Until 1978, its predecessor statute, A.R.S. § 13-106(B), read as follows: "An indictment, information or complaint for a felony other than [murder, embezzlement of public monies, and falsification of public records] shall be found or filed within five years after its commission." 1969 Ariz. Sess. Laws, ch. 133, § 1. Earlier versions of the statute also referred exclusively to the commission of the offense as the

---

[2]Given this statement in *Jackson*, we do not further address arguments raised by both parties suggesting that certain dicta, addressing the unique context of that case, compels a particular result here.

[3]Although A.R.S. § 13-107 was amended in 1985, the only subsection amended was (F), a subsection not relevant to the issues at hand. *See* 1985 Ariz. Sess. Laws, ch. 223, § 1.

trigger of the time limitation. *See* Ariz. Code Ann. § 44-1121 (1939) ("An indictment for any other felony must be found, or an information filed, within five [5] years after its commission."); Ariz. Rev. Code § 4926 (1928) ("An indictment for any other felony must be found, or an information filed, within five years after its commission."); Rev. Stat. of Ariz. Penal Code § 710 (1901) ("An indictment for any other felony than murder must be found within five years after its commission."). Finally, the Model Penal Code, a source of Arizona's 1978 criminal code, similarly triggered its limitation provision from the date of the commission of the offense. *See* Model Penal Code § 1.06 cmt. at 88 (Official 1962 Draft and Revised Comments 1985) (stating that "[t]he Code provides that . . . the period of limitation starts to run at the time the offense is committed rather than . . . at the time the offender is identified"); Gerber, *supra*, 1-2 (noting role of Model Penal Code as source of 1978 code revisions).

¶15        Thus, the state's construction of the relevant version of § 13-107—that the limitation period is not triggered until it could reasonably identify a suspect—would constitute a wholesale departure from the scheme adopted in previous Arizona statutes and the Model Penal Code. We believe the legislature would have expressly articulated such a dramatic departure had it so intended. Instead, the legislature included no reference to either an offender or a suspect in the language of § 13-107(B). To the contrary, the new language in the 1978 revision implicitly continued the focus on the commission of the offense, rather than the identity of the offender. *See* Gerber, *supra*, 107-2 ("This statute

10

extends the five-year limitation established in former A.R.S. § 13-106 to seven years, beginning from the date of discovery as opposed to the commission of a crime.").

¶16 The state contends the tolling provision in subsection (D) demonstrates a legislative intent to focus on the behavior of the suspect in calculating the limitation period and we should therefore read the grammatically vague language in subsection (B) as triggering the limitation period from the date the suspect is identified. Subsection (D) of § 13-107 provides that "[t]he period of limitation does not run during any time when the accused is absent from the state or has no reasonably ascertainable place of abode within the state." 1985 Ariz. Sess. Laws, ch. 223, § 1. But Arizona's previous statutes and the Model Penal Code both contained nearly identical tolling provisions yet expressly triggered their respective limitation periods from the commission of the offense.[4]

¶17 By contrast, the legislature's 1997 amendment of § 13-107 expressly addressed the question of unknown offenders. While leaving undisturbed subsection (D), the legislature added a new subsection (E) that provides: "The period of limitation does not run for a serious offense as defined in section 13-604 during any time when the identity of

---

[4]Between 1901 and 1978, the applicable statute provided that the limitation period did not include any time when the defendant was "not an inhabitant of, or usually resident within" the state. Rev. Stat. of Ariz. Penal Code § 712 (1901); Ariz. Rev. Code § 4926 (1928); Ariz. Code Ann. § 44-1121 (1939); Ariz. Rev. Stat. § 13-106(C) (1956); 1969 Ariz. Sess. Laws, ch. 133, § 1.

11

the person who commits the offense or offenses is unknown." 1997 Ariz. Sess. Laws, ch. 135, § 1.[5]

**¶18**     We are required to interpret statutes so every word is meaningful. *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, ¶ 141, 98 P.3d 572, 613 (App. 2004). And we do not render entire subsections redundant or superfluous unless we have no other choice in interpreting a statute. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 34, 105 P.3d 1163, 1171-72 (2005); *Hourani v. Benson Hosp.*, 211 Ariz. 427, ¶ 7, 122 P.3d 6, 10 (App. 2005). If the former version of § 13-107(B) can be read as referring to the actual or constructive discovery of the suspected offender, the legislature would have had no need to add present subsection (E). Moreover, the legislature's 1997 revision aptly demonstrates that it was fully capable of articulating its intent on the topic when it eventually saw fit to do so.

**¶19**     The state counters that the 1997 amendment "clarified" the existing language rather than adopting a new offender-based approach to the limitation statute. But if that were the case, the legislature would have amended the ambiguous language in § 13-107(B) instead of retaining that language untouched and adding an entirely new subsection (E). *See* 1997 Ariz. Sess. Laws, ch. 135, § 1. The ambiguous language in § 13-107(B) that became

---

[5]We note in passing that the legislature also amended the statute in 2001 and 2002. Section 13-107(A), A.R.S., now provides that sexual offenses are among those offenses for which there is no limitation period. 2001 Ariz. Sess. Laws, ch. 183, § 1; 2002 Ariz. Sess. Laws, ch. 219, § 6.

12

effective in 1978 has never been amended. *Compare* 1977 Ariz. Sess. Laws, ch. 142, § 39, *with* 2002 Ariz. Sess. Laws, ch. 219, § 6. Thus, our examination of the history of the statute compels us to conclude that, under the version of § 13-107 applicable here, the limitation period begins to run from the date the authorities knew or should have known the offense was committed.

Purpose of Statute

**¶20** To complete our analysis, however, we also examine the purpose of former § 13-107. "Statutes of limitation in criminal cases are designed primarily to protect the accused from the burden of defending himself against charges of long completed misconduct." *State v. Fogel*, 16 Ariz. App. 246, 248, 492 P.2d 742, 744 (1972), *quoted with approval in Price v. Maxwell*, 140 Ariz. 232, 234, 681 P.2d 384, 386 (1984), and *Martin v. Superior Court*, 135 Ariz. 99, 100, 659 P.2d 652, 653 (1983). The United States Supreme Court explained the policies behind such statutes as follows:

> "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity."

13

*United States v. Marion*, 404 U.S. 307, 323, 92 S. Ct. 455, 465 (1971), *quoting Toussie v. United States*, 397 U.S. 112, 114-15, 90 S. Ct. 858, 860 (1970). As one commentator succinctly put it, "after a certain amount of time, evidence that may prove or disprove criminal liability becomes stale. Witnesses die, move away, or forget. Physical evidence disintegrates. It becomes increasingly difficult to determine what actually happened." Gerber, *supra*, 107-2.

**¶21** And a discussion on the limitation statute in the Model Penal Code, a major inspiration of our 1978 criminal code revision, examined the statutory purposes in greater depth. *See* Gerber, *supra*, 1-2.

> There are several reasons for the imposition of time limitations: First, and foremost, is the desirability that prosecutions be based upon reasonably fresh evidence. With the passage of time memories fade, witnesses die or leave the area, and physical evidence becomes more difficult to obtain, identify, or preserve. In short, possibility of erroneous conviction is minimized when prosecution is prompt. Second, if the actor long refrains from further criminal activity, the likelihood increases that he has reformed, diminishing the necessity for imposition of the criminal sanction. If he has repeated his criminal behavior, he can be prosecuted for recent offenses committed within the period of limitation. Hence, the need for protecting society against the perpetrator of a particular offense becomes less compelling as the years pass. Third, after a protracted period the retributive impulse which may have existed in the community is likely to yield to a sense of compassion aroused by the prosecution for an offense long forgotten. Fourth, it is desirable to reduce the possibility of blackmail based on a threat to prosecute or to disclose evidence to enforcement officials. Finally, statutes of limitations "promote repose by giving security and stability to human affairs."

14

Model Penal Code § 1.06 cmt. at 86 (Official 1962 Draft and Revised Comments 1985), *quoting Wood v. Carpenter*, 101 U.S. 135, 139 (1879).

¶22 Although some of the above-listed purposes might not apply to petitioners' specific criminal behaviors and histories, we are obligated to consider general public policies and purposes in interpreting ambiguous statutory language, not the particular facts of the individual cases before us. We acknowledge that the concerns about dissipating evidence and erroneous convictions might not exist here if the DNA evidence constitutes overwhelming evidence of guilt, a factual question on which we lack a complete record and render no opinion. But the limitation on prosecutions in § 13-107 makes no exception for cases in which the state has strong evidence of a suspect's guilt.

¶23 The general purposes of statutes of limitation are furthered by our construction of the version of § 13-107 applicable here. By beginning the limitation period with the discovery of the offense, the legislature encouraged law enforcement officers to promptly investigate reports and to gather and process evidence of alleged offenses. That scheme also promotes speedy prosecutions that permit an accused to mount a defense before witnesses' memories have faded and evidentiary trails have grown cold. The construction the respondent judges applied would instead reward dilatory investigation and permit prosecutions to proceed based simply on the state's assertion that it could not determine the alleged perpetrator until some new scientific test had been developed.

15

Other Arguments by the State

¶24　　　We find unhelpful the notice of supplemental authorities the state provided this court just before oral argument, listing numerous tort cases addressing a civil statute of limitation and its discovery rule. There is a notable difference between cases in which an injured plaintiff seeks compensatory damages and cases in which the state seeks to prosecute a person for violating its criminal laws. Moreover, we have not attempted to parse the exact state of the comparable civil discovery rule when the legislature first adopted the discovery rule in § 13-107, but recognize that, however the civil rule was interpreted and applied in 1978, cases as recent as 2002 applying the current interpretation and application would not assist us in interpreting § 13-107.

¶25　　　Finally, the state contends the rule of lenity does not apply here. That rule applies in a criminal case "when a statute is ambiguous and dictates that any doubt about statutory construction be resolved in favor of a defendant." *State v. Fell*, 203 Ariz. 186, ¶ 10, 52 P.3d 218, 221 (App. 2002). However, we do not apply the rule unless we have first concluded (1) the plain language of the statute is unclear, and (2) the """"statute's context, history, subject matter, effects and consequences, spirit, and purpose"""" still leave the statute susceptible to more than one interpretation. *State v. Sanchez*, 209 Ariz. 66, ¶ 6, 97 P.3d 891, 893 (App. 2004), *quoting State v. George*, 206 Ariz. 436, ¶ 6, 79 P.3d 1050, 1054 (App. 2003), *quoting Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d at 220. Although we have acknowledged that the pertinent language of the statute at issue is ambiguous, we do not

16

believe the legislature's intent in 1978 is susceptible to more than one interpretation. Therefore, we agree with the state that the rule of lenity does not apply, but, because we have construed the statute in favor of Taylor and Johnson, that conclusion does not assist the state.

¶26    Nonetheless, that rule of construction provides additional support for our conclusion here.  The state concedes that the language of the pertinent version of § 13-107 is ambiguous, and for the reasons stated above, its history, context, and purposes demonstrate, at minimum, that the statute is reasonably subject to the construction urged by Taylor and Johnson.  Thus, under the rule of lenity, we would resolve any doubt in favor of Taylor and Johnson even were we persuaded that the legislature could conceivably have intended the construction the state urges.

**Conclusion**

¶27    Considering the language, historical context, and purposes of the relevant version of § 13-107(B), we conclude the legislature intended that the limitation period run from the time the state either discovered or, with the exercise of reasonable diligence should have discovered, that an offense had been committed.  Applying that interpretation, we conclude the evidence the respondent judges considered and relied upon relating to TPD's development and use of DNA technology was irrelevant in light of the state's

acknowledgment that it had known since the day of the offenses that they had been committed.[6]

¶28　　　　We are mindful of the frustration law enforcement officials, crime victims, and the public experience when prosecutions based on substantial scientific evidence are barred by the passage of time. But it is for the legislature, not this court, to strike the appropriate balance between the interest of an accused in defending against charges at a time when evidence is readily available and the counterveiling interest of the state in prosecuting the criminally culpable. The legislature struck that balance in the version of the statute at issue, applicable to crimes committed between 1978 and 1997, by triggering the limitation period from the date the state knew or should have known an offense had been committed.[7]

---

[6]Although that evidence was irrelevant, it demonstrated Taylor's DNA profile had been determined considerably earlier than the date on which the state submitted the DNA profile of the semen sample taken from R. to CODIS. In addition, the evidence showed the delay in establishing the laboratory's connection to CODIS resulted not from a delay in creating CODIS but from the laboratory's continuing to perform DNA analysis by a different method for two years after CODIS became operational. Finally, the evidence also showed neither of the underlying cases was a high priority case and had simply languished in a backlog of old cases.

[7]As noted earlier, in 1997, perhaps in response to technological advances in crime detection, the legislature shifted that balance to trigger the limitation period from the date the state learns the identity of the perpetrator of a serious offense. And, in 2001, our legislature substantially narrowed the applicability of the limitation statute, eliminating any deadline for pursuing prosecutions for sexual assault and other more serious offenses. These amendments render our decision here of diminishing importance, applicable only to offenses committed before July 21, 1997.

18

¶29 Accordingly, considering the statutory language, history, and purpose, particularly the legislature's subsequent amendment of § 13-107 in 1997, we conclude that the limitation periods here, as the legislature intended them to be applied in 1994, have expired. As a result, we necessarily conclude the respondent judges abused their discretion in ruling otherwise. *See State v. Jackson*, 208 Ariz. 56, ¶ 12, 90 P.3d 793, 796 (App. 2004). Therefore, we vacate the respondent judges' orders denying petitioners' motions to dismiss the indictments and instruct the respondents to grant the motions.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PHILIP G. ESPINOSA, Judge